'07 CIV 7607

JUDGE McMAHON

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK REBAR INSTALLATION, INC. and UNITED STATES REBAR, INC. | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| -- against -- | )<br>) Civil Action No. |
| ROBERT LEDWITH, TERRENCE MOORE, FRED LEMOINE, KEVIN KELLY, ALFRED G. GEROSA, KEVIN O'BRIEN, JOHN BRUNETTI, AND DENNIS ULVERSOY, as TRUSTEES of the LOCAL #46 METALLIC LATHERS UNION AND REINFORCING IRON WORKERS PENSION FUND, | )<br>)<br>) **COMPLAINT FOR DECLARATORY AND OTHER RELIEF**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

RECEIVED AUG 27 2007 U.S.D.C. S.D.N.Y. CASHIERS

## Introduction

1.  Plaintiffs New York Rebar Installation, Inc. ("NY Installation") and United States Rebar, Inc. ("US Rebar") seek a declaratory judgment pursuant to 28 U.S.C. §2201 that US Rebar and NY Installation did not withdraw from the Local #46 Metallic Lathers Union and Reinforcing Iron Workers Pension Fund ("Fund") under Section 4203(b)(2) of the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §1381(b)(2), and that NY Installation and US Rebar do not owe any withdrawal liability to the Fund.

2.  NY Installation and US Rebar also seek corresponding preliminary and permanent injunctive relief pursuant to 28 U.S.C. §2201 staying (a) any obligation NY Installation or US Rebar may have to arbitrate any challenge to the Trustees' assessment of withdrawal liability,

and (b) any obligation NY Installation and US Rebar may have to make interim withdrawal liability payments to the Fund.

3. NY Installation and US Rebar also request that the Court award them all costs and expenses they incur pursing this action, including reasonable attorney's fees, under Section 4301(e) of MPPAA, 29 U.S.C. §1451(e), because, among other things, the Trustees' withdrawal liability assessment is without merit and was asserted in bad faith.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action pursuant to Section 4301(c) of MPPAA, 29 U.S.C. §1451(c), and 28 U.S.C. §1331.

4. The Fund is administered in this District. Therefore, venue is proper in this District pursuant to 4301(d) of MPPAA, 29 U.S.C. §1451(d), and 28 U.S.C. §1391(b).

### Parties

5. NY Installation is a corporation organized under the laws of New York. NY Installation has an office located at 322 North Main Street, Freeport, New York 11520. Charles Doherty owns 100% of the stock of NY Installation. US Rebar is a corporation organized under the laws of New York, and also has an office located at 322 North Main Street, Freeport, New York 11520. Charles Doherty owns 50% of the stock of US Rebar, and the Estate of James Wilson, who died in July 2004, owns the other 50%.

6. The Fund is a jointly administered multiemployer labor-management pension plan and trust that is established and maintained pursuant to various collective bargaining agreements and Section 302 of the Labor Management Relations Act, 29 U.S.C. §186. The Fund primarily covers employees in the building and construction industry. The Fund maintains its principal office at 260 East 78th Street, New York, NY 10021-2095.

8.      At all relevant times, Defendants Robert Ledwith, Terrence Moore, Fred LeMoine, and Kevin Kelly were members of the Fund's Board of Trustees who were appointed by the Union. Each of the foregoing Trustees maintains an office at 1322 Third Avenue, New York, NY 10021, as well as 260 East 78th Street, New York, NY 10021-2095.

9      At all relevant times, Defendant Alfred G. Gerosa was a member of the Fund's Board of Trustees who was appointed by the employers that contribute to the Fund. Gerosa maintains an office at Gerosa Construction Corporation, 49 West 45th Street, Suite 900, New York, NY 10036, as well as 260 East 78th Street, New York, NY 10021-2095.

10.     At all relevant times, Defendant Kevin O'Brien was a member of the Fund's Board of Trustees who was appointed by the employers that contribute to the Fund. O'Brien maintains an office at PRT Contracting, Inc., 426 West 54th Street, New York, NY 10019, as well as 260 East 78th Street, New York, NY 10021-2095.

11.     At all relevant times, Defendant John Brunetti was a member of the Fund's Board of Trustees who was appointed by the employers that contribute to the Fund. Brunetti maintains an office at 260 East 78th Street, New York, NY 10021-2095.

12.     At all relevant times, Defendant Dennis Ulversoy was a member of the Fund's Board of Trustees who was appointed by the employers that contribute to the Fund. Ulversoy maintains an office at Gazetten Contracting, Inc., 58 West 40th Street, New York, NY 10018, as well as 260 East 78th Street, New York, NY 10021-2095. Defendants Ledwith, Moore, LeMoine, Kelly, Gerosa, O'Brien, Brunetti, and Ulversoy, will be collectively referred to herein as the Trustees.

## Background

13.     US Rebar was signatory to various collective bargaining agreements with the Union covering metal rebar construction work it performed in New York city for public entities. US Rebar permanently ceased operations covered under its last contract with the Union ("CBA") on or about January 18, 2005, and terminated the CBA effective June 30, 2005.

14.     Substantially all of the employees for whom US Rebar had an obligation to contribute to the Fund under the CBA performed work in the building and construction industry.

15..    By letter dated January 11, 2007, a true and correct copy of which is attached hereto as Exhibit A, the Trustees advised US Rebar that it had completely withdrawn from the Fund in July 2005 under 29 U.S.C. §1383(b)(2) because "US Rebar and/or its affiliated or controlled concerns continue to perform work of the prior collective bargaining agreement of the type for which contributions were previously required." The Trustees' letter also demanded that US Rebar pay $3,408,247.00 in withdrawal liability in a lump sum, or make monthly $132,043.82 payments for twenty-seven months commencing April 1, 2007, with a final payment of $31,609.00.

16.     Section 4203(b)(2) of MPPAA, 29 U.S.C. §1383(b)(2), provides that for an employer whose employees work in the construction industry, a complete withdrawal occurs only if:

>   (A)   an employer ceases to have an obligation to contribute under the plan, and
>
>   (B)   the employer--
>
>   (i)   continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or

    (ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

  17. For purposes of Section 4203(b)(2) of MPPAA, 29 U.S.C. §1383(b)(2), the "employer" is the entity that had an obligation to contribute to the plan under a collective bargaining agreement, and the "control group" that may be jointly and severally liable for the assessment of any withdrawal liability against the employer under Sections 4001(a)(14) and (b)(1) of MPPAA, 29 U.S.C. §1301(a)(14) and (b)(1), includes any trades and businesses that are under common control with the "employer" as of the date of the withdrawal, with such common control being defined in Treasury regulations 1.414(b)-1 and 1-414(c)-2, to mean each trade or business that, among other things, shares at least 80% common ownership with the employer, considering only owners who are common to each such entity.

  18. By letter dated February 2, 2007, a true and correct copy of which is attached hereto as Exhibit B, US Rebar asked the Trustees to reconsider their assessment of withdrawal liability because neither US Rebar nor any other trade or business within US Rebar's control group had performed work within the jurisdiction of the CBA of the type for which contributions were previously required after January 18, 2005.

  19. US Rebar supported its February 2, 2007 request for review with a Declaration from Charles Doherty, which stated in pertinent part as follows:

   1. I am the President of United States Rebar, Inc. ("US Rebar), New York Rebar Supply, Inc. ("NY Rebar"), and New Jersey Rebar, Inc. ("NJ Rebar"), and have been President of each such entity since before January 1, 2004.

   2. James Wilson, an adult who is not related to me in any way, and I formed US Rebar, NY Rebar, and NJ Rebar and until July 2004, each of us owed 50% of the stock of each such entity.

   3. James Wilson died in July 2004. Since then Mr. Wilson's 50% interest in US Rebar, NJ Rebar, and NY Rebar has been held by Mr. Wilson's

personal representative (Mr. Wilson died without a will and to the best of my knowledge, his interest in US Rebar, NJ Rebar, and NY Rebar has not yet been distributed to any of his heirs).

    4.    Since Mr. Wilson died in July 2004, I have not owned or operated any trade or business in which Mr. Wilson's personal representatives or his heirs have owned any part or played any role other than US Rebar, NJ Rebar, and NY Rebar.

    5.    NJ Rebar permanently ceased operating in 2003.

    6.    US Rebar permanently ceased operations covered by its collective bargaining agreement with the Metal Lathers Local 46 ("Union") on or about January 18, 2005, and it permanently ceased all operations in late 2005.

    7.    NY Rebar was a fabricator and never performed work covered by the collective bargaining agreement between US Rebar and the Union. In any event, NY Rebar also permanently ceased all operations in late 2005.

20.    Notwithstanding Mr. Doherty's Declaration, by letter dated March 13, 2007, a true and correct copy of which is attached hereto as Exhibit C, the Trustees denied US Rebar's request for review, explaining in pertinent part that "It is the understanding of the Pension Fund that entities controlled and operated by United States Rebar, and its subsidiaries and affiliates, continue to perform the same or similar work covered by US Rebar, Inc.'s former collective bargaining agreement without such work being covered by any collective bargaining agreement."

21.    By letter dated March 19, 2007, a true and correct copy of which is attached hereto as Exhibit D, US Rebar asked the Trustees to identify the other entities referred to in its March 13, 2007 letter, whose activities gave rise to the Trustees' assessment of withdrawal liability against US Rebar.

22.    By letter dated March 21, 2007, a true and correct copy of which is attached hereto as Exhibit E, the Trustees advised US Rebar that it, along with American Concrete Structures Inc., New York Rebar Supply, Inc., Rebar Equipment Rental, Herrara Construction Services, Debt Recovery Group, LLC, Merit Rebar, Rebar Management Solutions, New Chair

and Accessory, and Joseph Kelly Construction Corp. "<u>constitute the controlled group which has performed work leading to the imposition of withdrawal liability upon United States Rebar Inc. and its allied and affiliated concerns</u>." (Emphasis added.)

23. By letter dated April 5, 2007, a true and correct copy of which is attached hereto as Exhibit F, US Rebar filed a supplemental request for reconsideration with the Trustees. US Rebar explained that the information the Fund cited in its March 21, 2007 letter to support its assessment of withdrawal liability was incorrect because (a) the entities that are or were in a control group with US Rebar never performed work in the jurisdiction of the CBA of the type for which contributions were previously required after June 30, 2005, and (b) the entity that did perform the work cited in the Fund's March 21, 2007 letter - NY Installation - was owned solely by Mr. Doherty and, therefore, never was in a control group with US Rebar as a matter of law. US Rebar's supplemental request for reconsideration included a supporting Declaration from Charles Doherty, which stated as follows:

> 1. James Wilson and I formed and each owned 50% of New York Rebar Supply, Inc. ("NY Rebar"), Rebar Equipment Rental ("Rebar Rental"), and Herrera Construction Services ("Herrera").
>
> 2. NY Rebar was a fabrication shop and retailer that never performed any work in the jurisdiction of the CBA of the type for which contributions were previously required and, in any event, permanently ceased operating in approximately October 2005.
>
> 3. Rebar Rental was formed as a corporation, but never operated at all.
>
> 4. Herrera never performed any work in the jurisdiction of the CBA of the type for which contributions were previously required and was dissolved in approximately 2002.
>
> 5. As of the date of this Declaration, Mr. Wilson's estate continues to own 50% of NY Rebar and Rebar Rental.
>
> 6. I formed and own (and have always owned) 100% of American Concrete Structures ("American Concrete"), Debt Recovery Group, LLC ("Debt Recovery"),

Rebar Management Solutions (formerly known as Merit Rebar) ("Rebar Solutions"), and New York Rebar Installation, Inc. ("Rebar Installation.").

7. American Concrete was formed as a corporation, but never operated at all.

8. Debt Recovery purchases distressed debt and manages it and has never performed work in the jurisdiction of the CBA of the type for which contributions were previously required.

9. Rebar Solutions provides administrative management services (payroll, bookkeeping, etc.) and has never performed work in the jurisdiction of the CBA of the type for which contributions were previously required.

10. Rebar Installation is a business that installs rebar; however, unlike US Rebar, Rebar Installation installs rebar after it has been bent at other locations, and works on private projects for private customers that US Rebar never serviced (US Rebar serviced primarily public works projects for public entities). Rebar Installation did perform rebar installation work at each of the locations cited in the Fund's March 21, 2007 letter, but for private customers that US Rebar never serviced.

11. I do not have any ownership interest in any entity known as New York Chair and Accessory or Joseph Kelly Construction, and neither such entity ever had any ownership interest in US Rebar, NY Rebar, NJ Rebar, and Rebar Rental. Moreover, the only connection any entity I have owned in whole or in part has had with either New York Chair and Accessory or Joseph Kelly Construction is that the latter rented space at 332 North Main Street, which the same place that Rebar Installation rents space.

24. By letter dated August 1, 2007, a copy of which is attached hereto as Exhibit G, the Trustees denied US Rebar's supplemental request for reconsideration, stating in pertinent part as follows:

> After reviewing all of these communications and Declarations and after considering the results of their own investigation, the Trustees of the Metal Lathers Local 46 Pension Fund have determined that withdrawal liability is due and owing from United States Rebar and/or its principal officer and/or it affiliated and commonly controlled companies. Therefore the Trustees reiterate their assessment of withdrawal liability against United States Rebar, Inc. and its affiliated or commonly controlled concerns under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multi-Employer Pension Plan Amendments Act of 1980 (MEPPAA). The Trustees have determined that United States Rebar, Inc. instituted a complete withdrawal from a multi-employer pension plan and, through its principal, continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which

contributions were previously required under the collective bargaining agreement between Metallic Lathers Local 46 and United States Rebar, Inc.

25. Significantly, the Trustees' August 1, 2005 letter did not identify any facts or law supporting their determination, or addressing any of the arguments US Rebar presented in support of its supplemental request for reconsideration or its original request for review.

26. Based on information and belief, NY Installation and US Rebar allege that (a) the Trustees' based their decision to uphold the assessment of withdrawal liability on work that NY Installation performed after June 30, 2005, and (b) the Trustees are or will be claiming that NY Installation is an "affiliated or commonly controlled concern" of US Rebar that is jointly and severally liable with US Rebar for the subject withdrawal liability. Therefore, NY Installation and US Rebar have standing to pursue this action.

## **Count I**

27. The allegations in the foregoing Paragraphs 1 - 26 are incorporated herein by reference.

28. When US Rebar permanently ceased to have an obligation to contribute to the Fund on or about June 30, 2005, US Rebar was the "employer" for purposes of Section 4203(b)(2) of MPPAA, 29 U.S.C. §1383(b)(2), and its "controlled group," as that term is used in Section 4001(a)(14)(A) and (b)(1) of MPPAA, 29 U.S.C. §1301(a)(14)(A) and (b)(1), consisted solely of US Rebar, NY Rebar, NJ Rebar, and Rebar Rental.

29. US Rebar has not performed any work in the jurisdiction of the CBA of the type for which contributions were previously required since January 18, 2005, and NY Rebar, NJ Rebar, and Rebar Rental never performed work in the jurisdiction of the CBA of the type for which contributions were previously required.

30. The other entities whose conduct the Trustees at one time cited to support the assessment of withdrawal liability - American Concrete, Debt Recovery, Rebar Management, New York Chair and Accessory, and Joseph Kelly Construction Corp. - are not now and never were employers or in a control group with US Rebar for purposes of MPPAA, and never performed work in the jurisdiction of the CBA of the type for which contributions were previously required.

31. The entity that performed the work that forms the basis for the Trustees' assessment of withdrawal liability - NY Installation - is not now and never was an employer or in a control group with US Rebar for purposes of MPPAA, and never performed any work in the jurisdiction of the CBA of the type for which contributions were previously required.

32. Because NY Installation is not now and never was an employer or in a control group with US Rebar for purposes of MPPAA, the Court, rather than an arbitrator, must determine whether NY Installation's activities after June 30, 2005 supports the Trustees' determination that a withdrawal occurred, and whether US Rebar and NY Installation owe any withdrawal liability to the Fund. Thus, this matter is properly before the Court.

33. For all of the foregoing reasons, the Court should declare that US Rebar and NY Installation did not withdraw from the Fund and that US Rebar and NY Installation do not owe any withdrawal liability to the Fund.

## Count II

34. The allegations in the foregoing Paragraphs 1 - 3 are incorporated herein by reference.

35. Under Section 4221 of MPPAA, 29 U.S.C. §1401, an employer or a control group member seeking to contest a plan's assessment of withdrawal liability generally must arbitrate any disputes with the plan's sponsor.

36. In this case, however, any arbitration that could be initiated to contest the disputed withdrawal liability should be preliminarily and then permanently stayed because the Trustees' withdrawal liability determination turns, in the first instance, on the actions of NY Installation, which is not now and never was an employer or in a control group with US Rebar for purposes of MPPAA. Therefore, the Court, rather than an arbitrator, must determine whether NY Installation's activities after June 30, 2005 supports the Trustees' determination that a withdrawal occurred, before any other disputes concerning the assessment of withdrawal liability must be arbitrated.

37. Under Section 4219(c)(5) of MPPAA, 29 U.S.C. §1399(c)(5), if an employer fails to make an interim payment of withdrawal liability when due, and if the failure to pay is not cured within sixty days after being notified of the same, the plan generally can demand immediate payment of the full amount of the withdrawal liability.

38 In this case, however, any obligation to make interim withdrawal liability payments should be preliminarily and then permanently stayed because the Trustees' withdrawal liability assessment turns on the actions of an entity that never was an employer or in a control group with US Rebar for purposes of MPPAA. Therefore, the Court, rather than an arbitrator, must determine whether NY Installation's activities after June 30, 2005 support the Trustees' determination that a withdrawal occurred, before any interim payments can be due and owing

39. The Trustees assessed withdrawal liability against US Rebar and NY Installation in bad faith because, among other things, (a) the Trustees do not have any facts showing that US

Rebar is still performing work within the jurisdiction of the CBA of the type for which contributions were previously required, (b) the Trustees know or should know that the entity whose conduct formed the basis for the assessment of withdrawal liability - NY Installation - is not now and never was an employer or part of US Rebar's control group for purposes of ERISA, and (c) the Trustees are maliciously trying to use this multi-million dollar assessment of withdrawal liability to force NY Installation out of business for unlawful and/or improper competitive reasons.

WHEREFORE, NY Installation and US Rebar ask the Court to provide the following relief:

1. Declare that US Rebar did not withdraw from the Fund and that US Rebar and NY Installation do not owe any withdrawal liability to the Fund.

2. Preliminarily and then permanently stay the arbitration of any disputes over the Trustees' assessment of withdrawal liability

3. Preliminarily and then permanently stay the obligation to make interim withdrawal liability payments

4. Award NY Installation and US Rebar all of the costs and expenses it incurred in connection with this action, including reasonable attorney's fees.

5. Award NY Installation and US Rebar such other relief that they may request and the Court may deem to be just and proper.

                Respectfully submitted,

                BUCHANAN, INGERSOLL & ROONEY, PC

                */s/ Ryan P. Farley*
                _____
                Ryan P. Farley (RF-6984)
                One Chase Manhattan Plaza, 35th Floor
                New York, NY 10005-1417
                Phone: 212-440-4492
                Fax: 212-440-4401
                E-mail: ryan.farley@bipc.com

<u>OF COUNSEL</u>:
Robert S. Hawkins
BUCHANAN, INGERSOLL & ROONEY, PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985
Phone: 215-665-5310
Fax: 215-665-8760
E-mail: robert.hawkins@bipc.com

David J. Laurent
BUCHANAN, INGERSOLL & ROONEY, PC
20th Floor, One Oxford Centre
Pittsburgh, PA 15219-1410
Phone (412) 562-1857
Fax (412) 562-1041
E-Mail: david.laurent@bipc.com