conceal the amount of contributions that were due can be personally liable <u>for the delinquent contributions</u>. *Leddy v. Standard Drywall, Inc.,* 875 F. 2d 383 (2d Cir. 1989).

The Trustees will likely argue that (1) under *Leddy,* Doherty, through his cash payments to employees and US Rebar's corresponding failure to contribute to the Fund for the subject work, defrauded the Fund and, therefore, Doherty has an obligation to contribute to the Fund, and (2) under *Korea Shipping*; the fact that Doherty has an obligation to contribute to the Fund means that he is an "employer" for purposes of collecting withdrawal liability. Nonetheless, the Court should reject any such argument because *Leddy* and *Korea Shipping* have not been and should not be combined to circumvent the general rule and impose personal responsibility for corporate withdrawal liability.

First, *Leddy* involved a claim for <u>delinquent contributions under Title I</u> of ERISA, rather than a claim for <u>withdrawal liability under Title IV.</u> As explained above, the Title I's definition of "employer" simply does not apply to claims for withdrawal liability and nothing in *Leddy* suggests that the Court was fashioning a standard that also was intended to apply to withdrawal liability.

Second, *Leddy* did not hold that the defrauding corporate officer was an "employer" or that the officer had a <u>contractual obligation</u> to contribute to the plan. Instead, the Court ruled only that the defrauding corporate officer could be held responsible for the <u>corporation's breach of its contractual obligation to contribute to the plan</u>. Thus, *Leddy* does not establish that Doherty had a contractual obligation to contribute to the Fund.

Third, the term "employer," as defined in *Korea Shipping,* applies only to corporate employers that have a <u>contractual obligation</u> to contribute to the plan under a collective bargaining agreement. In *Korea Shipping*, the subject <u>companies</u> contractually agreed to and

- 13 -

did, in fact, contribute to the plan as required by a collective bargaining agreement.  Indeed, as the Court observed, "the determination that Korea and Delta were subject to withdrawal liability was firmly bottomed on the express terms of the GCA [the General Cargo Agreement]."  880 F. 2d at 1540.  Likewise, in *Canario* (a post-*Leddy* decision)*,* the Court, citing *Korea Shipping,* observed that the Second Circuit held "the 'obligation to contribute' definition contained in 29 U.S.C. § 1392(a) is to be used in determining whether a business entity is responsible for withdrawal liability, but has not applied, nor indicated that it would apply such a definition to individual shareholders or officers of a corporation."  782 F. Supp. 757.

Fourth, there are substantial policy reasons for not applying *Leddy* to withdrawal liability cases.  As the Court in *Glover* explained:

> Unlike suits brought to collect delinquent contributions or unpaid wages, where those failing to contribute are fully accountable for not doing so, in the withdrawal liability context individuals may be entirely free of fault, yet upon the employer's withdrawal from the pension plan, the plan may still have unfunded vested benefits which result in a liability assessment.  <u>Thus, the reason for holding individuals personally liable as employers for unpaid wages or pension contributions is absent when assessing withdrawal liabilities</u>.  (Emphasis added.)

681 F. Supp. at 1296.  *See also Sun-Up,* 634 F. Supp. at 16, where the Court similarly observed that "[u]nlike the actions brought to collect delinquent pension contributions or unpaid wages, <u>withdrawal liability situations often occur in the absence of any nonfeasance or misfeasance by any individual with fiduciary responsibilities.  Accordingly, the rationale for holding individuals personally liable as employers for unpaid wages or pension contributions is often inapplicable</u>."  (Emphasis added.)

In sum, neither *Leddy* nor *Korea Shipping* warrant holding a controlling officer or shareholder responsible for the corporation's withdrawal liability as an "employer."  Therefore, the Court should follow the universally accepted rule that Doherty's status as an alleged

- 14 -

controlling shareholder or officer cannot make him an "employer" for purposes of collecting US Rebar's withdrawal liability, and dismiss Count II of the Trustees' Counterclaim.

### B.   The Settlement Agreement and the Release Bar Count II of the Counterclaim

Count II of the Counterclaim also should be dismissed because it is based exclusively on conduct that occurred on or before June 30, 2005 and, therefore, the Settlement Agreement and the Release bar the Trustees from asserting that claim.

#### 1.   The Settlement Agreement and the Release Bar Claims for All Matters Up to and Including June 30, 2005.

The plain language of the Settlement Agreement and the Release bar the Trustees from asserting any claims against Doherty based on events that occurred on or before June 30, 2005.[4] The Settlement Agreement states that the Trustees "will take no action against United States Rebar, Inc. and Charles S. Doherty <u>for any matters previous to June 30, 2005</u>."  (Emphasis added.)  Appendix, Exhibit 2, Settlement Agreement, ¶1C.  The Release similarly states that the Trustees release Doherty "from all actions …, claims, and demands, whatsoever … which … the RELEASORS … ever had, now have, or hereafter can, shall or may, have for, <u>upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Release.  For all those matters up to and including June 30, 2005</u>."  (Emphasis added.)  Appendix, Exhibit 3.

#### 2.   Count II of the Trustees' Counterclaim is Based Exclusively on Events that Occurred on or Before June 30, 2005.

All of the facts on which the Trustees base their claim that Doherty is an "employer" occurred on or before June 30, 2005.  First, the Trustees allege that "Doherty has admitted under

---

[4] "[A] clear and unambiguous release … should be enforced according to its terms," and "when general language is used in the releasing document, 'the release is to be construed most strongly against the releasing party.'"  *Consorcio Prodipe S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S. D. N. Y. 2008).

- 15 -

oath that between 1997 and mid-2003, he orchestrated a criminal scheme to pay US Rebar's Union workers a substantial portion of their wages in case.  Doherty's admitted purpose in perpetrating the unlawful scheme to avoid having to make the CBA-mandated payments to, and fraudulently conceal the non-payment of such benefits from the Plan."  Appendix, Exhibit 1 (Counterclaim, ¶61).  Second, the Trustees cite Doherty's creation of NY Install in late 2004 as "an effort to conceal and disguise from the Plan the fact that withdrawal liability had been incurred .…"  *Id.* (Counterclaim, ¶65).  Therefore, because all of these events occurred before June 30, 2005, the Settlement Agreement and the Release bar the Trustees from pursuing Count II.

      **C.**    **Doherty's Conduct After June 30, 2005 Does Not and Cannot Establish That He is an "Employer" for Purposes of MPPAA**

      Even if, under *Leddy* and *Korea Shipping* a controlling shareholder's or officer's fraud with respect to plan contributions could establish that the individual is an "employer" for purposes of collecting withdrawal liability, which is denied, the Trustees cannot establish the predicate element under *Leddy* that Doherty somehow defrauded them <u>after June 30, 2005</u>.[5]

      To establish fraud for purposes of *Leddy*, the Trustees must show that Doherty made "(i) a material false representation or omission of an existing fact, (ii) the defendant's knowledge of the falsity, (iii) the defendants' intent to defraud, (iv) the plaintiff's reasonable reliance upon the misrepresentation or omission, and (v) consequent damage to the Plaintiff."  *Cement and Concrete Workers District Council Welfare Fund, Pension Fund, Legal Services Fund and*

---

[5] Mere status as one who plays a dominant role in the affairs of a corporate employer is not sufficient to impose personal liability for delinquent contributions under *Leddy*.  *Sasso v. Cervoni,* 985 F. 2d 49, 51 (2d Cir.), *cert. denied*, 508 U.S. 973 (1993) ("His liability is sought to be established simply because of his dominant role in the affairs of a corporate employer.  If individual liability for ERISA obligations is to be imposed on those in such a role, Congress must supply the remedy.")

*Annuity Fund v. Lollo*, 148 F. 3d 194, 196 (2d Cir. 1998). Thus, to establish fraud for purposes of *Leddy,* the Trustees must be able to prove that Doherty somehow made false statements on which they relied to their detriment.

*Lollo* illustrates the difficulties the Trustees face trying to meet this high standard. In *Lollo,* trustees sought to impose personal liability <u>for delinquent contributions</u> on a controlling officer of a subcontractor. The officer in question had falsely represented to certain general contractors that the subcontractor did not owe any contributions to the trusts. In reliance on those false representations, the general contractors paid money to the subcontractor without taking steps to insure that the delinquent fund contributions would be paid. Although the district court found that the corporate officer had committed fraud and was liable for the delinquent contributions, the Court of Appeals for the Second Circuit reversed.

The Court of Appeals initially observed that "a fraud judgment had to be based on more than a finding that Lollo lied to a third party about the Company's unpaid obligations to the Funds. [Citation omitted.] Rather, the plaintiffs had to prove that they were themselves deceived," and could not establish the requisite reliance "by showing only that a third party relied on a defendant's false statements." 148 F. 3d at 196. Consequently, the Court ruled that "[b]ecause the district court did not find that plaintiffs had proven their reliance on Lollo's misrepresentations, and because there is no evidence that they did so rely, Lollo is not liable under either ERISA or New York law." *Id.* at 197. *See also Building Service 32B-J Health Fund v. McCaffree,* 225 Fed. Appx. 25 (2d Cir. 2007) (trustees failed to establish personal liability under *Leddy* because they did not present "evidence to show that they ever detrimentally relied upon misrepresentations made by appellee which deprived them of the delinquent contributions.")

- 17 -

Accordingly, even if *Leddy* can be used to hold a controlling shareholder or officer responsible for withdrawal liability, which is denied, Doherty cannot be considered to have an obligation to contribute to the Fund under *Leddy* unless, at a minimum, the Trustees demonstrate that (1) Doherty made materially false representations <u>to them after June 30, 2005,</u> and (2) they reasonably relied on the false representation to their detriment. However, the Trustees have not and cannot produce any such evidence.

First, the Trustees cannot reasonably assert that Doherty fraudulently misled them regarding hourly contributions because no such contributions have been or could be due for work performed after US Rebar terminated its last CBA effective June 30, 2005.

Second, the Trustees may assert that by operating NY Installation as US Rebar's alleged alter ego after June 30, 2005, Doherty somehow defrauded the Fund out of withdrawal liability; however, the fact that US Rebar continued to operate through its alleged alter ego NY Installation is the very event that, according to the Trustees, gave rise to the alleged withdrawal liability in the first place. Thus, the Trustees cannot reasonably claim that those same facts also simultaneously defrauded them out of the withdrawal liability.

Third, and most importantly, there is no evidence that Doherty made any false representations <u>to the Trustees</u> regarding US Rebar's or NY Installation's activities after June 30, 2005, <u>on which the Trustees relied to their detriment</u>. Doherty did not make any representations (or have a duty to make any representations) to the Trustees regarding US Rebar's or NY Installation's <u>post-June 30, 2005</u> activities until <u>after</u> the Trustees assessed withdrawal liability on January 11, 2007. Since then, Doherty has steadfastly asserted that US Rebar and NY Installation are not alter egos, and the Trustees have steadfastly rejected those assertions and

pursued their assessment of withdrawal liability. Appendix, Exhibit 4 (Trustees' letter dated August 1, 2007, rejecting Doherty's request for review of the assessment of withdrawal liability).

Accordingly, the Trustees cannot identify any post-June 30, 2005 fraud by Doherty that was (1) directed to them, and (2) on which they relied to their detriment. Therefore, the Trustees cannot use *Leddy* to establish that Doherty conduct after June 30, 2005 rendered him an "employer" for purpose of withdrawal liability.

## VI.   **CONCLUSION**

For all of the foregoing reasons, the Court should grant partial summary judgment in favor of Doherty and against the Trustees with respect to Count II of the Counterclaim, together with such other and further relief as the Court deems just and proper.

Dated:  August 20, 2008

BUCHANAN INGERSOLL & ROONEY PC

_____/s/_____
Ryan P. Farley (RF-6984)
New York Times Building
620 8th Avenue, 23rd Floor
New York, NY 10018
Phone:  212-440-4492
Fax:  212-440-4401
E-mail:  ryan.farley@bipc.com

- 20 -

OF COUNSEL:

Robert S. Hawkins
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985
Phone:  215-665-5310
Fax:  215-665-8760
E-mail:  robert.hawkins@bipc.com

David J. Laurent
George Basara
BUCHANAN INGERSOLL & ROONEY PC
20th Floor, One Oxford Centre
Pittsburgh, PA 15219-1410
Phone (412) 562-1857
Fax (412) 562-1041
E-Mail:  david.laurent@bipc.com