## Parties

**Counterclaim Plaintiffs**

48. The Plan is a "multiemployer pension plan" within the meaning of Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), and an "employee pension benefit plan" within the meaning of Sections 3(2)(A) and 3(3) of ERISA, 29 U.S.C. §§ 1002(2)(A) and 1002(3), established and maintained for the purpose of providing retirement and related benefits to eligible participants and beneficiaries, and subject to the withdrawal liability provisions of ERISA, 29 U.S.C. §§ 1381 *et seq.*

49. Defendants and Counterclaim Plaintiffs Robert Ledwith, Terrence Moore, Fred LeMoine, Kevin Kelly, Alfred G. Gerosa, Kevin O'Brien, John Brunetti, and Dennis Ulversoy are Trustees and fiduciaries of the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

50. The Trustees are authorized to bring this action on behalf of the Plan, its participants and its beneficiaries pursuant to Sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. § 1132(a)(3) and 1451(a)(1).

**Counterclaim Defendants**

51. US Rebar is a New York corporation with a place of business at 332 North Main Street, Freeport, New York 11520.

52. NY Installation is a New York corporation with a place of business at 332 North Main Street, Freeport, New York 11520.

53. Charles Doherty ("Doherty") is a natural person who, at all relevant times herein, was the president and controlling shareholder of US Rebar, NY Installation, and various other related business entities.

9

## Factual Background

**Doherty Forms US Rebar**

54. Beginning in or about the mid-1980s, Charles Doherty worked as a metallic lather on construction sites in and around New York City. At or about the same time, Doherty became at first an apprentice, and then a journeyman member of the Union.

55. In or about 1994, Doherty formed US Rebar. According to Doherty, at all times relevant herein, all of the stock of US Rebar was owned by or in the name of Doherty and James Wilson ("Wilson").

56. From its inception, US Rebar was engaged principally in the business of cutting, bending, and installing steel reinforcing bars, which are widely used in public, commercial, and residential construction projects.

57. Beginning in or about 1994, Doherty caused US Rebar to enter into a CBA with the Union. US Rebar and the Union periodically renegotiated the CBA.

58. At all times relevant herein, US Rebar was required under the terms of the CBA to make certain contributions to the Plan, in proportion to the wages it paid to Union employees.

59. On or about July 16, 2004, Wilson was shot and killed after murdering a police officer in Babylon, New York. Subsequent to Wilson's death, Doherty alone exercised complete control over US Rebar.

**Doherty Is Convicted of Money Laundering and Admits Defrauding the Plan**

60. On or about September 12, 2005, Doherty was convicted in the U.S. District Court for the Eastern District of New York, by plea of guilty, of a massive money laundering conspiracy spanning from 1998 through at least July 31, 2002. Doherty is currently awaiting sentencing in connection with this conviction.

61. Doherty has acknowledged under oath that between 1997 and into mid-2003, he orchestrated a criminal scheme to pay US Rebar's Union workers a substantial portion of their wages in cash. Doherty's admitted purpose in perpetrating the unlawful scheme was to avoid having to make the CBA-mandated benefit payments to, and fraudulently conceal the non-payment of such benefits from, the Plan.

62. To execute the scheme, Doherty and US Rebar needed huge amounts of cash. As a result, Doherty routinely caused US Rebar to issue checks made payable to fictitious vendors (or real vendors with whom US Rebar had no relationship) and, through the use of a check casher, converted the checks into cash.

63. Doherty created the fictitious vendors (and real vendors with whom US Rebar had no relationship) on US Rebar's books and records in order to fraudulently conceal his criminal scheme from third parties, including the Plan, and even his own accountants. Doherty further caused US Rebar to take fraudulent tax deductions for the payments made to the phantom vendors.

64. Doherty has admitted to converting in excess of $8.5 million of such bogus US Rebar checks into cash during the period charged in the conspiracy alone.

**Doherty's Fraudulent Scheme Continues with his Formation of NY Installation**

65. In or about late 2004, and as further part of his extended and continuing scheme to defraud the Plan, Doherty formed NY Installation. Doherty formed NY Installation as an alter-ego of US Rebar under a different name and using non-Union labor, all in an effort to conceal and disguise from the Plan the fact that withdrawal liability had been incurred as more fully set forth in Paragraphs 77-79, *infra*.

66. From its inception and at all times relevant herein, Doherty owned 100% of the stock of NY Installation.

11

67. From its inception and at all times relevant herein, Doherty exercised complete control over NY Installation.

68. From its inception and at all times relevant herein, NY Installation was engaged the same business as US Rebar – cutting, bending, and installing steel reinforcing bars – in the same geographical market as US Rebar.

69. From its inception and at all times relevant herein, the senior management of NY Installation was the same or substantially identical to the senior management of US Rebar.

70. From its inception and at all times relevant herein, NY Installation operated from the same offices as US Rebar.

71. From its inception and at all times relevant herein, the operating personnel and administrative staff of NY Installation were the same or substantially identical to the operating personnel and administrative staff of US Rebar.

72. From its inception and at all times relevant herein, NY Installation used the same equipment and vehicles as US Rebar.

73. From its inception and at all times relevant herein, NY Installation marketed and sold its products and services to the same customer base as NY Rebar.

74. From its inception and at all times relevant herein, NY Installation was in all material respects the same business as, and the alter-ego of, US Rebar.

**US Rebar Ceases Making Contributions to the Plan**

75. On or about January 18, 2005, US Rebar purported to permanently cease operations covered by the CBA with the Union.

76. On or about July 1, 2005, US Rebar permanently ceased making contributions to the Plan.

**The Withdrawal Liability**

77.     US Rebar purported to cease all business operations in or about late 2005. By that time, NY Installation had begun performing work, within the jurisdiction of the CBA, of the type for which US Rebar was previously required to make contributions under the CBA. NY Installation continues to perform such work within the jurisdiction of the CBA.

78.     By continuing to perform work within the jurisdiction of the CBA of the type for which US Rebar and Doherty were previously required to make contributions under the CBA (and as the alter-ego of US Rebar), NY Installation, US Rebar, and Doherty effected a "complete withdrawal" from the Plan within the meaning of ERISA Section 4203(b)(2), 29 U.S.C. § 1383(b)(2).

79.     By completely withdrawing from the Plan, NY Installation, US Rebar, and Doherty incurred withdrawal liability pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

80.     On or about January, 11, 2007, the Trustees notified US Rebar of the amount of the withdrawal liability (the "Withdrawal Liability"), the schedule for the liability payments, and made a demand for payment in accordance with the schedule, as required under 29 U.S.C. § 1399(b).

81.     To date, neither US Rebar, NY Installation, or Doherty, nor any other person or entity which is an alter-ego of or under common control with either US Rebar or NY Installation, has demanded arbitration or initiated arbitration procedures in accordance with 29 U.S.C. §1401. Instead, US Rebar and NY Installation commenced this declaratory judgment action against the Trustees.

## FIRST COUNTERCLAIM
### For Declaratory Judgment that NY Installation is the Alter-Ego of US Rebar

82. Counterclaim Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 81 above as if fully set forth herein.

83. Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381-1453, the term "employer" means a person who is obligated to contribute to a multiemployer pension plan.

84. Beginning in or about 1994 and at all times relevant herein, US Rebar was obligated to contribute to the Plan. Therefore, US Rebar was an "employer" within the meaning of ERISA, as amended by the MPPAA.

85. In or about late 2005, US Rebar purported to permanently cease all business operations. By that time, NY Installation had been fully established and had commenced operations as the alter-ego of US Rebar.

86. As the alter-ego of US Rebar, NY Installation is, together with US Rebar, an "employer" within the meaning of ERISA, as amended by the MPPAA, and, as such, is jointly and severally liable with US Rebar for the assessed Withdrawal Liability.

## SECOND COUNTERCLAIM
### For Declaratory Judgment that Doherty is an Employer under ERISA

87. Counterclaim Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 86 above as if fully set forth herein.

88. Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381-1453, the term "employer" means a person who is obligated to contribute to a multiemployer pension plan.

14

89. Beginning in or about 1994 and at all times relevant herein, US Rebar was obligated to contribute to the Plan. Therefore, US Rebar was an "employer" within the meaning of ERISA, as amended by the MPPAA.

90. At all times relevant herein, Doherty was a corporate officer of and exercised total operational control over US Rebar and its alter-ego NY Installation.

91. At all times relevant herein, Doherty was directly responsible for US Rebar's and its alter-ego NY Installation's failure to make contributions to the Plan, in accordance with the terms and conditions of the CBA.

92. At all times relevant herein, Doherty has exercised his total operational control over US Rebar and its alter-ego NY Installation in a fraudulent, criminal, and otherwise illegal manner, all as part of his continuing efforts to defraud the Plan.

93. Accordingly, in addition to US Rebar and its alter-ego NY Installation, Doherty was also an "employer" within the meaning of ERISA, as amended by the MPPAA, and, as such, is jointly and severally liable with US Rebar and NY Installation for the Withdrawal Liability.

### PRAYER FOR RELIEF

**WHEREFORE**, Defendants and Counterclaim Plaintiffs respectfully request that the Court enter judgment in their favor and an order:

(a) dismissing the Complaint with prejudice and awarding them costs, disbursements, and attorneys' fees;

(b) on the First Counterclaim, entering a declaratory judgment that NY Installation is the alter-ego of US Rebar, is, therefore, together with US Rebar, an "employer" within the meaning of 4201(a) of ERISA, 29 U.S.C. § 1381(a) and, as such, is jointly and severally liable for the Withdrawal Liability;

(c) on the Second Counterclaim, entering a declaratory judgment that, in addition to US Rebar and its alter-ego NY Installation, Doherty is also an "employer" within the meaning of Section 4201(a) of ERISA, 29 U.S.C. §1381(a) and, as such, is jointly and severally liable with both US Rebar and NY Installation for the Withdrawal Liability; and.

(d) such other relief as to this Court seems just and proper.

Respectfully submitted,

**MARKOWITZ & RICHMAN**

By: /s/ Richard H. Markowitz
Richard H. Markowitz, Esq. (RM5158)
121 S. Broad Street, Suite 1100
Philadelphia, PA 19107
(215) 875-3100
kbrookes@markowitzandrichman.com

**KAMING & KAMING**
Joseph S. Kaming, Esq. (JK1386)
156 E 65th St
New York, NY 10021-6608
(212) 535-0245
jkaming@nyc.rr.com

**LAW OFFICES OF ANDREW J. WEINSTEIN**
Andrew J. Weinstein, Esq. (AW7395)
521 Fifth Avenue, Suite 3300
New York, NY 10175
(212) 582-8900
ajw@weinsteinlaw.net

*Attorneys for Defendants and Counterclaim Plaintiffs*

Dated: October 12, 2007