APPENDIX

EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
ROBERT LEDWITH, TERRENCE MOORE, KEVIN :
KELLY, FRED LeMOINE, ALFRED G. GEROSA, :
JOHN BRUNETTI, KEVIN O'BRIEN, and JOSEPH : 07-CV-4237 (DGT)
MARTINELLI, as TRUSTEES of the LOCAL #46 :
METALLIC LATHERS UNION AND :
REINFORCING IRON WORKERS WELFARE :
TRUST, ANNUITY FUND, PENSION FUND, : **AMENDED COMPLAINT**
APPRENTICESHIP FUND, VACATION FUND, : **AND JURY DEMAND**
SCHOLARSHIP FUND and OTHER FUNDS, :
:
- and - :
:
ROBERT LEDWITH, as Business Manager of the :
LOCAL #46 METALLIC LATHERS UNION AND :
REINFORCING IRON WORKERS and as Trustee of :
the LOCAL #46 METALLIC LATHERS AND :
REINFORCING IRON WORKERS POLITICAL :
ACTION FUNDS, :
:
             Plaintiffs, :
:
        - against - :
:
CHARLES DOHERTY, UNITED STATES REBAR, :
INC., and JOHN DOES 1-10, :
:
             Defendants. :
:
---------------------------------------------------------------- x

     Plaintiffs Robert Ledwith, Terrence Moore, Kevin Kelly, Fred LeMoine, Alfred G. Gerosa, John Brunetti, Kevin O'Brien, and Joseph Martinelli, as Trustees (the "Trustees") of the Local #46 Metallic Lathers Union and Reinforcing Iron Workers Welfare Trust, Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Fund, Scholarship Fund, and other Funds, and Robert Ledwith, as Business Manager of the Local #46 Metallic Lathers Union and Reinforcing Iron Workers (the "Union") and as Trustee of the Local #46 Metallic Lathers and Reinforcing Iron Workers Political Action Funds (all of the above funds and the welfare trust referenced in

{1261-001/00020521.DOCv2}

this paragraph hereinafter referred to collectively as the "Plans"), as and for their Amended Complaint, hereby allege, upon personal knowledge with respect to their own acts and upon information and belief with respect to all other matters, as follows:

## NATURE OF THE CASE

1. In this action, Plaintiffs seek to recover damages resulting from a massive and long-term criminal scheme to defraud Plaintiffs of millions of dollars of benefit contributions and other monies. Plaintiffs allege causes of action based on the Defendants' fraudulent inducement of a settlement agreement, violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and breach of contract. Plaintiffs also seek injunctive and other equitable relief pursuant to Sections 502(a)(3) and 515 of ERISA, and Section 301 of the Labor-Management Relations Act of 1947, as amended.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court by ERISA Sections 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) and (f); Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185; and 28 U.S.C. §§ 1331 and 1337. Supplemental jurisdiction over Plaintiffs' state law causes of action is conferred by 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to Section 502(3)(2) of ERISA, 29 U.S.C. § 1301(a)(3), 18 U.S.C. § 1965, and 28 U.S.C. § 1391.

## PARTIES

**Plaintiffs**

4. The Plans are jointly administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements and various trust agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. §

186(c) (5), and otherwise. Some of the Plans are employee benefit plans within the meaning of Sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002 3(1), 3(2), 3(3), and 1132(d)(1), and multiemployer plans within the meaning of sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37) and 1145. Some of the Plans are authorized to maintain suit as independent legal entities under Section 502(d)(1), 29 U.S.C. § 1132(d)(1), and are tax exempt entities pursuant to Sections 401(a), 501(a), and 501(c)(9) of the Internal Revenue Code, 26 U.S.C. §§ 401(a), 501(a) and (c)(9). The Plans maintain their offices and are administered at 260 East 78th Street, New York, New York 10075-2095.

5. Plaintiffs Robert Ledwith, Terrence Moore, Kevin Kelly, Fred LeMoine, Alfred G. Gerosa, John Brunetti, Kevin O'Brien, and Joseph Martinelli, are Trustees and fiduciaries of the respective Plans within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

6. The Trustees are authorized to bring this action on behalf of the Plans, their participants and their beneficiaries pursuant to Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. § 1132(a)(3) and 1145.

7. The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, which represents employees in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act, 29 U.S.C. § 142, Section 3(4) of ERISA, 29 U.S.C. § 1002(4), and as further defined in Section 12 of the General Associations Law of the State of New York. The Union maintains its offices at 1322 Third Avenue, New York, New York 10021.

**Defendants**

8. US Rebar is a New York corporation with a place of business at 332 North Main Street, Freeport, New York 11520.

9. Charles Doherty ("Doherty") is a convicted felon awaiting sentencing on a federal money laundering charge, the underlying facts of which form, in large part, the basis of this Complaint. Doherty is the president and controlling shareholder of US Rebar and various other related business entities.

10. John Does 1-10 are business entities and/or individuals which are jointly and severally liable, together with Doherty and US Rebar, for delinquent contributions under ERISA and other applicable laws and regulations.

## Factual Background

**Doherty Forms US Rebar**

11. Beginning in or about the mid-1980s, Doherty worked as a metallic lather on construction sites in and around New York City. At or about the same time, Doherty became at first an apprentice, and then a journeyman member of the Union.

12. In or about 1994, Doherty formed US Rebar. According to Doherty, at all times relevant herein, all of the stock of US Rebar was owned by or in the name of Doherty and James Wilson. From its inception, US Rebar was engaged principally in the business of cutting, bending, and installing steel reinforcing bars, which are widely used in public, commercial, and residential construction projects.

**The Collective Bargaining Agreements**

13. Beginning in or about 1994, Doherty caused US Rebar to enter into a collective bargaining agreement ("CBA") with the Union. US Rebar and the Union periodically renegotiated the CBA.

14. At all times relevant herein, US Rebar was required under the terms of the CBA to make certain benefit contributions and other payments to the Plaintiffs, in proportion to the wages it paid to Union employees.

15. At all times relevant herein, US Rebar was also required under the terms of the CBA to deduct dues and amounts for checkoffs from the wages paid to all its Union employees.

16. At all times relevant herein, US Rebar was required under the terms of the CBA to pay its Union employees 150% of their standard wage for overtime and Saturday (up to 10 hours) work, and 200% of their standard wage for work on Sundays and holidays (or after 10 hours of work on any other given workday). US Rebar was also required under the CBA to increase its benefit contributions and other payments to the Plaintiffs in proportion to the higher overtime, weekend and holiday wages.

17. At all times relevant herein, US Rebar was required under the CBA to prepare and submit a weekly payroll report (the "Weekly Reports") for each job site to the Plaintiffs. The Weekly Reports were required to accurately indicate, among other things, those Union workers employed by US Rebar on the job site and the number of hours worked by those workers during the prior calendar week.

18. The CBA further required US Rebar to send, together with the Weekly Reports, a check in the amount of US Rebar's combined benefit contributions and other payments to the Plaintiffs for the covered period.

**Doherty's Criminal Scheme to Defraud the Plaintiffs**

19. On or about September 12, 2005, Doherty was convicted in the U.S. District Court for the Eastern District of New York, by plea of guilty, of a massive money laundering conspiracy (in excess of $11 million) spanning from 1998 through July 31, 2002. Doherty is currently awaiting sentencing in connection with this conviction.

20. Doherty has acknowledged under oath that between 1997 and in or about mid-2003, he engaged in a criminal scheme to pay US Rebar's workers certain of their wages in cash.

21. To carry out the scheme, Doherty and US Rebar needed huge quantities of cash. Accordingly, Doherty caused US Rebar checks to be issued to fictitious vendors (or real vendors with whom US Rebar had no relationship) and, through the use of a check casher, Joseph Castello, converted the checks into cash.

22. At all times relevant herein, and as part of the scheme to defraud the Plaintiffs, Doherty created the fictitious vendors on US Rebar's books and records in order to fraudulently conceal and disguise his criminal scheme from third-parties, including the Plans, Union, and their auditors.

23. Doherty has admitted to converting in excess of $8.5 million worth of such bogus US Rebar checks into cash during the period of the charged conspiracy alone.

24. Doherty's purpose in engaging in this criminal scheme was to pay US Rebar's Union workers in cash and, thereby, avoid having to make millions of dollars of requisite benefit and other payments to the Plaintiffs in accordance with the CBA.

25. Plaintiffs first learned in late September 2007 that Doherty had paid Union employees in excess of $8.5 million in cash wages during the period of the charged conspiracy and had failed to remit to Plaintiffs the benefit contributions and other payments associated therewith. The instant action was promptly initiated thereafter.

**The Periodic Audits of US Rebar's Books and Records**

26. At all times relevant herein, US Rebar was required under the CBA to submit to periodic audits of its books and records by the Plaintiffs, for the purpose of, among other things, verifying the accuracy of the submitted Weekly Reports and that the proper amount of dues and benefit contributions had been remitted.

27. Between approximately 2001 and May 2005, pursuant to the terms of the CBA and with the assistance of an outside auditing firm, Plaintiffs audited US Rebar's books and

records for the following time periods: July 1, 2001 through December 31, 2002; January 1, 2003 through December 31, 2003; and January 1, 2004 through September 30, 2004 (the "Audits").

28.     Based on the books and records that Doherty and US Rebar provided to Plaintiffs, and which Doherty and US Rebar represented (and caused others to represent) to be accurate and complete, the outside auditors concluded that US Rebar owed Plaintiffs delinquent benefit contributions and other monies totaling $323,321.27 for the time frame covered by the Audits (the "Audit Balance").

**Doherty and US Rebar Dispute the Audits and Plaintiffs Initiate Suit to Collect**

29.     Doherty and US Rebar (directly and through their attorneys and accountants), both orally and in writing, consistently and repeatedly disputed the results of the Audits, the qualifications of the auditors, and the manner in which the Audits were conducted, and refused to pay any portion of the Audit Balance.

30.     As a result, on or about May 17, 2005, Plaintiffs filed a federal lawsuit (the "Lawsuit") against US Rebar, captioned *Local #46 Metallic Lathers Union and Reinforcing Iron Workers Welfare Trust et al. v. United States Rebar, Inc.*, 05-CV-2356 (CBA) (E.D.N.Y.), seeking, among other things, to collect the outstanding Audit Balance.

**Negotiation of the Settlement Agreement**

31.     Promptly upon the filing of the Lawsuit, the parties commenced settlement negotiations.

32.     Throughout the course of the negotiations, and as part of their continuing attempt to defraud the Plaintiffs, Doherty and US Rebar (directly and through their attorneys and accountants), both orally and in writing, continued to dispute the results of the Audits and sought credits, adjustments, and other deductions to the Audit Balance.