# APPENDIX

# EXHIBIT 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

ROBERT LEDWITH and ALFRED G. GEROSA, as
TRUSTEES of the LOCAL #46 METALLIC
LATHERS UNION AND REINFORCING IRON
WORKERS WELFARE TRUST, ANNUITY FUND,
PENSION FUND, APPRENTICESHIP FUND,
VACATION FUND, SCHOLARSHIP FUND and
OTHER FUNDS,

    - and -

07-CV-4237 (CBA) (CLP)

ROBERT LEDWITH, as Business Manager of the
LOCAL #46 METALLIC LATHERS UNION AND
REINFORCING IRON WORKERS and as Trustee of
the LOCAL #46 METALLIC LATHERS AND
REINFORCING IRON WORKERS POLITICAL
ACTION FUNDS,

               Plaintiffs,

    - against -

CHARLES DOHERTY, UNITED STATES REBAR,
INC., and JOHN DOES 1-10,

               Defendants.

------------------------------------------------------------------ x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

MARKOWITZ & RICHMAN
121 S. Broad Street, Suite 1100
Philadelphia, PA 19107
(215) 875-3100

LAW OFFICES OF ANDREW J. WEINSTEIN
521 Fifth Avenue, Suite 3300
New York, NY 10175
(212) 582-8900

## TABLE OF CONTENTS

Preliminary Statement ........................................................................................................... 1

RELEVANT FACTS ............................................................................................................ 5

    US Rebar's Payment Obligations to the Union ................................................................ 5

    The Audit Lawsuit and the Settlement Agreement .......................................................... 6

    Doherty and US Rebar's Off-the-Books Cash Payments to Union Members comes to Light ............................................................................................................. 8

ARGUMENT ......................................................................................................................... 9

I.    THE COURT SHOULD DECLINE TO CONSIDER EXTRINIC EVIDENCE ON THIS MOTION. .................................................................................................. 9

II.    THE SETTLEMENT AGREEMENT AND RELEASE DO NOT BAR THIS ACTION BECAUSE THEY WERE FRAUDULENTLY OBTAINED. ....................... 15

III.   THE AMENDED COMPLAINT ADEQUATELY ALLEGES FRAUDULENT INDUCEMENT. ............................................................................................................ 16

    A.    The Conduct Alleged In The Audit Lawsuit Is Entirely Distinct From The Fraudulent Conduct Alleged In The Amended Complaint. ................................. 17

    B.    Plaintiffs Have Adequately Alleged Reliance. ..................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Co. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955 (2007) ............................................. 9

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523 (2d Cir. 1985) ............................. 21, 22

*Bushkin, Gaims, Gaines, Jonas & Stream v. Garber*, 677 F. Supp. 774 (S.D.N.Y. 1988) ........... 16

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488 (S.D.N.Y. 2003) ............................................. 12, 13, 15

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)) .................................................... 10

*Cooper v. Pate*, 378 U.S. 546, 546 (1964) ..................................................................................... 9

*D.D. ex rel. V.D. v. New York City Bd. of Educ.*, No. CV-03-2489, 2004 WL 633222 (E.D.N.Y. Mar. 30, 2004) ......................................................................................................... 11

*Dale v. Hahn*, 440 F.2d 633 (2d Cir. 1971) .................................................................................. 11

*De Pace v. Matsushita Elec. Corp. of Amer.*, 257 F. Supp. 2d 543 (E.D.N.Y. 2003) .................. 15

*DIRECTV Group, Inc. v. Darlene Investments, LLC*, No. 05 Civ. 5819, 2006 WL 2773024 (S.D.N.Y. Sept. 27, 2006) ........................................................................................... 21, 22

*Dunkin' Donuts, Inc. v. Got-a-Lot-a-Dough, Inc.*, 2006 WL 3725340 (E.D.N.Y. Dec. 18, 2006) ........................................................................................... 12, 22, 24

*Finz v. Schlesinger*, 957 F.2d 78 (2d Cir. 1992) ........................................................................... 24

*Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669 (2d Cir. 1995) ....................................................... 9

*Goldsmith v. Nat'l Container Corp.*, 287 N.Y. 438 (1942) ........................................................... 15

*Green v. Hamilton Int'l Corp.*, 437 F. Supp. 723 (S.D.N.Y. 1973) .............................................. 15

*Howard v. Town of Bethel*, 481 F. Supp. 2d 295 (S.D.N.Y. 2007) .............................................. 10

*In re Worldcom, Inc.*, 296 B.R. 115 (Bankr. S.D.N.Y. 2003) ...................................................... 16

*JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2002) ................................ 23

*Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133 (2d Cir. 2000) ............................................... 12

*Local #46 Metallic Lathers Union and Reinforcing Iron Workers Welfare Trust et al. v. United States Rebar, Inc.*, 05-CV-2356 (CBA) (E.D.N.Y.) .................................................. 6

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293
    (S.D.N.Y. 2004) .................................................................................................................. 16

*Mangini v. McClurg*, 24 N.Y.2d 556 (1969) ............................................................................... 13

*Michael Aram, Inc. v. Laurey*, 05 Civ. 8380, 2006 WL 510527
    (S.D.N.Y. Mar. 1, 2006) ...................................................................................................... 10

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) ............................................ 9

*Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1201
    (2d Cir. 1998) ........................................................................................................... 12, 21, 24

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ............................................................................... 9

*Pickwick Comms., Inc. v. Weinberg*, No. 91 Civ. 1642, 1994 WL 620950
    (S.D.N.Y. Nov. 8, 1994), *aff'd*, 89 F.3d 825 (2d Cir. 1995) ............................................... 12

*RBS Holdings, Inc. v Wells Fargo Century, Inc.*, 485 F. Supp. 2d 472 (S.D.N.Y. 2007) ...... 13, 22

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155 (2d Cir. 1999) .......................... 14

*Schaifer Nance v. Estate of Andy Warhol*, 119 F.3d 91 (2d Cir. 1997) ...................................... 23

*Schwimmer v. Sony Corp. of Am.*, 637 F.2d 41 (2d Cir. 1980) ................................................... 14

*Urfirer v. Cornfeld*, 408 F.3d 710 (11th Cir. 2005) .................................................................... 15

*Waksman v. Cohen*, No. 00 Civ. 9005, 2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002) ......... 12, 24

*Warren v. Goord*, 476 F. Supp. 2d 407 (S.D.N.Y. 1007) ............................................................. 9

*Younger v. Ballentine*, No. 03 Civ. 8985, 2005 WL 2861586
    (S.D.N.Y. Nov. 1, 2005) ........................................................................................................ 9

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................................................. *passim*

Fed. R. Civ. P. 12(i) .................................................................................................................. 1, 2

Fed. R. Civ. P. 56(e) .................................................................................................................... 14

Fed. R. Evid. 801(c) ..................................................................................................................... 14

Plaintiffs Robert Ledwith and Alfred G. Gerosa, as Trustees of the Local #46 Metallic Lathers Union and Reinforcing Iron Workers Welfare Trust, Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Fund, Scholarship Fund, and other Funds, and Robert Ledwith, as Business Manager of the Local #46 Metallic Lathers Union and Reinforcing Iron Workers and as Trustee of the Local #46 Metallic Lathers and Reinforced Iron Workers Political Action Funds (hereinafter collectively "Union" or "Plaintiffs"), respectfully submit this Memorandum of Law, together with the Declaration of Andrew J. Weinstein, dated February 19, 2008 (and the exhibits annexed thereto), in opposition to the motion of Defendants Charles Doherty ("Doherty") and United States Rebar, Inc. ("US Rebar") (Doherty and US Rebar collectively referred to as "Defendants") to dismiss the Amended Complaint and for a hearing pursuant to Fed. R. Civ. P. 12(i). For the reasons set forth below, the Defendants' motion is meritless and should be denied in its entirety.

### Preliminary Statement

This lawsuit was brought on behalf of the Union to recover damages suffered from a massive criminal scheme perpetrated principally by defendant Doherty, the president and controlling shareholder of defendant US Rebar. There is no dispute that Doherty concocted a criminal scheme to, *inter alia*, write US Rebar checks to fictitious vendors (or real vendors with whom US Rebar had no relationship), convert those checks to cash through the use of a check casher, and then use the cash to pay Union workers "off-the-books." Indeed, Doherty has already been convicted of laundering in excess of $11 million to pay US Rebar's workers in cash (including more than $8.5 million of such bogus US Rebar checks discussed above), and he is currently awaiting sentencing before the Hon. Joanna Seybert in this District in connection with that conviction. There also can be no legitimate dispute that, in engaging in this criminal

scheme, Doherty and US Rebar defrauded the Union of millions of dollars of benefit and other payments owed under the collective bargaining agreement that governed Defendants' relationship with the Union.

Despite these undeniable facts, Defendants nevertheless steadfastly refuse to compensate the Union -- the victim of Doherty's criminal scheme -- for its massive losses. Rather, as set forth in their moving papers, Defendants attempt to shirk their obligations by falsely claiming that the Union waived its rights to recover for Doherty's criminal conduct by settling a previous civil action between the parties. The Union unequivocally denies prior knowledge of Doherty's massive off-the-books cash payment scheme. It also firmly rejects any suggestion that it has waived its rights to recover the millions of dollars of dues and benefits owed under the collective bargaining agreement. Rather, as the Union alleges in this action, Doherty and US Rebar fraudulently induced the Union to enter into the very settlement agreement and releases behind which Defendants seek to hide.

If the Union prevails, Defendants would be hard-pressed to fight the remaining allegations of fraud, conspiracy, and breach of contract. Indeed, on this motion Defendants do not even suggest as much.

Instead, Defendants move the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint in its entirety with prejudice and/or to order a hearing pursuant to Rule 12(i).[1] As discussed below, the prior lawsuit behind which Defendants seek to shield themselves had absolutely nothing whatsoever to do with Doherty's criminal conduct in this case

---

[1] Defendants' request for a hearing pursuant to Rule 12(i) is misplaced. That rule, recently enacted, merely provides that a motion pursuant to Rule 12(b)(6) must be "heard and decided before trial unless the court orders a deferral until trial."

2

or the payment of workers in cash off-the-books. That case -- for breach of contract and ERISA violations -- concerned the apparent underpayment of $242,613.09 that the Union's auditors discovered during routine audits.

Assuming the "best defense is a good offense" strategy, Defendants brazenly assert that the Union "should be sanctioned" for bringing this lawsuit. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint dated January 15, 2008 ("Br.") at 2. It is the criminal Defendants, however, who have skirted the line. They utterly ignore the black letter principle that, on a motion to dismiss, the allegations in the complaint enjoy the presumption of truth. Instead, their arguments rely almost exclusively on three self-serving affidavits and would require the Court to make credibility assessments and factual determinations that would be wholly improper on any dispositive motion.

For the reasons discussed in *Point I* below, the Court should reject these improper affidavits and afford the Amended Complaint the presumption of truth that is required on a motion to dismiss.[2] When these highly inappropriate and self-serving affidavits are removed from the mix, and the allegations in the Amended Complaint are granted the presumption of truth that is required, there is absolutely no legal basis upon which to dismiss the Amended Complaint.

Indeed, the only argument Defendants make that does *not* rely on the improperly submitted "evidence" is that the plain language of the release in the prior litigation bars the instant claims. While the Union disputes this contention, this argument simply has no bearing

---

[2] For the reasons set forth more fully at 11-14, *infra*, the Court should decline Defendants' invitation, without any supporting authority, to convert this motion to one for summary judgment at this early stage of the proceedings. Br. at 2, n.1.

3

here. Rather, the language of the settlement agreement and the accompanying releases are irrelevant where, as here, they were obtained by fraud. Fraudulently obtained contracts (including settlement agreements and releases) are vitiated as a matter of law. *See Point II.*

To parry the effect of this black letter rule, Defendants assert that the "fraud" at issue in the prior lawsuit and the instant action are not "separate and distinct." The "support" for this contention comes solely from the improperly-submitted affidavits. As discussed in *Point IIIA*, even a cursory review of the documents *properly* before the Court -- the complaint and settlement agreement from the prior lawsuit and the Amended Complaint in this action -- amply illustrates that both the factual and legal claims in the prior and instant lawsuits are wholly distinct.

Finally, Defendants assert that the "extrinsic evidence" (read: the improper affidavits) shows that the Union "knowingly released" all claims against them, including the claims based on the criminal conduct alleged in the Amended Complaint. Thus, the argument continues, the Union cannot allege as a matter of law that it relied on Defendants' books and records in settling the prior litigation. Without the affidavits, however (which may not be considered here), this argument fails as a matter of both fact and law. The Amended Complaint expressly alleges facts that, if presented at trial, create factual issues as to what the Union knew, when the Union knew it, and, most important, whether the information constituted knowledge sufficient to bar recovery from Defendants now. On this motion, the Amended Complaint's allegations that it did not know about Doherty's criminal scheme to pay US Rebar's workers millions of dollars in cash off-the-books, and that it justifiably relied on Defendants' books and records, must be credited. *See Point IIIB.*

4

Simply put, Defendants have no factual or legal grounding for their motion other than the improper affidavits, which should be rejected without consideration. The Court, therefore, should deny Defendants application in its entirety and order the parties to proceed with discovery.

## RELEVANT FACTS

### US Rebar's Payment Obligations to the Union

At all times relevant to the matters alleged in the Amended Complaint, the relationship between the Union and US Rebar was governed by a collective bargaining agreement (the "CBA"). Ex. 1 ¶¶ 13-14.[3] The CBA required US Rebar to make certain benefits and dues payments to the Union in proportion to the wages it paid to Union employees. *Id.* ¶¶ 14-15. The amount of contributions, benefit payments, and dues were to be calculated based on weekly payroll reports (the "Weekly Reports") that US Rebar submitted to the Union. *Id.* ¶ 17. The CBA required US Rebar to send, together with the Weekly Reports, a check in the amount of US Rebar's combined benefit contributions and other payments due to the Union for the covered period. *Id.* ¶ 18.

Pursuant to the CBA, and to verify that the proper amount of dues and benefit contributions had been remitted, the Union was entitled to audit US Rebar's books and records. *Id.* ¶ 26. The Union performed such audits with the assistance of an outside auditing firm for the period between July 1, 2001 through September 30, 2004. *Id.* ¶ 27. Based on their review of US Rebar's books and records, the auditors concluded that US Rebar owed the Union $323,321.27 for the time period under audit. *Id.* ¶ 28.

---

[3] All exhibits referenced herein are attached to the Declaration of Andrew J. Weinstein, dated February 19, 2008, and referenced as "Ex. ___." For the Court's convenience, the Amended Complaint is attached as Ex. 1.