**The Audit Lawsuit and the Settlement Agreement**

Doherty and US Rebar repeatedly rejected the auditor's results and refused to pay any portion of the amount that was claimed to be owed. Ex. 1 ¶ 29. As a result, on or about May 17, 2005, the Union filed a federal lawsuit against US Rebar, captioned *Local #46 Metallic Lathers Union and Reinforcing Iron Workers Welfare Trust et al. v. United States Rebar, Inc.*, 05-CV-2356 (CBA) (E.D.N.Y.) (the "Audit Lawsuit"). Ex. 2. The Audit Lawsuit asserted the following four claims, all related to the outstanding audit balance:

- Breach of Contract (based upon US Rebar breaching the CBA in failing to make required contributions to the Funds of at least $271,018.14 during the period from July 1, 2001-September 30, 2004) (First Cause of Action). Ex. 2 ¶¶ 9-13;

- ERISA (based upon US Rebar's failure to pay benefit contributions required under the CBA) (Second Cause of Action). *Id.* ¶¶ 14-18;

- Audit (seeking an order compelling US Rebar to submit to an audit for the period beginning January 1, 2001) (Third Cause of Action). *Id.* ¶¶ 19-21; and

- Breach of Contract (based upon US Rebar breaching the CBA in failing to pay required dues and "check-offs" to the Union of $12,098.81 for the period July 1, 2001-September 30, 2004) (Fourth Cause of Action). *Id.* ¶¶ 22-26.

Significantly, nowhere in the Audit Lawsuit did Plaintiffs allege: (1) fraud; (2) that US Rebar's books and records -- upon which they had relied and which formed the basis of the audit results and their legal claims -- were bogus or had been falsified; or (3) that Defendants had been paying Union workers in cash and off-the-books.

Promptly upon the filing of the Audit Lawsuit, the parties commenced settlement negotiations. Ex. 1 ¶ 31. Throughout the course of the negotiations, Doherty and US Rebar (directly and through their attorneys and accountants), both orally and in writing: (1) disputed the results of the audits and sought credits, adjustments, and other deductions to reduce the amount of the outstanding audit balance, *id.* ¶¶ 32-33; and (2) falsely and fraudulently claimed

6

that the true amount owed to Plaintiffs was significantly less than had been determined by the audits. *Id.* ¶ 33.

For example, by letter dated July 21, 2005, US Rebar's attorney stated that "US Rebar has advised that the *actual sum* due and owing to the Funds is $150,000." *Id.* (emphasis supplied). Thereafter, by letter dated December 12, 2005, Defendants (through their counsel) falsely claimed that their proposed settlement sum of $220,000 would in fact "place the [Union] *in a whole position.*" *Id.* ¶ 34 (emphasis supplied). Ultimately, following several months of picayune negotiations, the Union, Doherty, and US Rebar agreed that the sum of $242,613.09 represented the *full amount* of delinquent dues and benefit contributions due to Plaintiffs for the period July 1, 2001 through June 30, 2005. *Id.* ¶ 40.

Between February and early April 2006, counsel for the respective parties exchanged draft settlement agreements. *Id.* ¶ 38. The final settlement agreement in the Audit Lawsuit was memorialized, executed, and so-ordered by this Court on or about April 7, 2006 (the "Settlement Agreement"). *Id.*; *see also* Ex. 1 at Ex. A. The Settlement Agreement included a specific representation by the parties that the settlement amount -- $242,613.09 -- was in fact the full amount owed to the Union:

> It is understood and agreed by the Funds and UNITED STATES REBAR, INC., and the signatory, Charles S. Doherty that the settlement amounts herein represent payments of *all amounts owed* by UNITED STATES REBAR, INC. and Charles S. Doherty to the funds for the period July 1, 2001 through June 30, 2005 under the terms of the Local #46 Metallic Lathers Union and Reinforcing Iron Workers Welfare Trust, Annuity Fund, Pension Fund, Apprentice Fund, Vacation Fund, Scholarship Fund and all Other Funds and applicable collective bargaining agreements.

Ex. 1 at Ex. A. ¶ 5 (emphasis supplied).

7

The Settlement Agreement contemplated that, upon satisfaction of the terms of the Settlement Agreement, the Union would provide Defendants with a release (the "Release") "in the form attached [t]hereto." Ex. 1 at Ex. A ¶1B. The Settlement Agreement set forth a payment schedule, pursuant to which Defendants were obligated to pay principal and interest commencing on March 1, 2006 and continuing quarterly thereafter through September 1, 2009. Ex. 1 at Ex. A ¶ 3.

**Doherty and US Rebar's Off-the-Books Cash Payments to Union Members Comes to Light**

In September 2005, defendant Doherty was charged and convicted of a money laundering conspiracy involving more than $11 million and spanning from 1998 through July 31, 2002. Ex. 1 ¶ 19. Doherty is currently awaiting sentencing in connection with this conviction. *Id.* ¶ 19. As alleged in the Amended Complaint, the Union first learned *in late September 2007* that Doherty had paid Union workers massive sums of cash off-the-books and had failed to remit to the Union the benefit contributions and other payments associated therewith. *Id.* ¶ 25.

Promptly upon discovering Doherty's fraud against the Union, Plaintiffs commenced the instant action alleging claims for racketeering and racketeering conspiracy in violation of RICO, delinquent contributions in violation of ERISA, breach of contract, and fraud. *Id.* ¶ 25. An Amended Complaint was filed on or about November 27, 2007, which added, *inter alia*, a cause of action for fraudulent inducement of the Settlement Agreement *Id.* ¶¶ 48-102.

8

## ARGUMENT

I.  **THE COURT SHOULD DECLINE TO CONSIDER EXTRINIC EVIDENCE ON THIS MOTION.**

It is elementary that on a motion to dismiss the movant must convince the Court that the challenged complaint is so insufficient *as a matter of law* that plaintiffs should not even be "entitled to offer evidence to support the claims.'" *Warren v. Goord,* 476 F. Supp. 2d 407, 409 (S.D.N.Y. 2007) (*quoting Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir. 1995) (other citations omitted)). Under this standard, a Rule 12(b)(6) motion should be granted *only* if the plaintiff has failed to provide at least some basis for the allegations that support the elements of the claim. *See Bell Atlantic Co. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955, 1969 (2007); *see also Patane v. Clark,* 508 F.3d 106, 111-112 (2d Cir. 2007) (stating that "to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face'").

On a motion to dismiss, the complaint is the primary source from which the Court must draw to determine the sufficiency of the pleading. *See Younger v. Ballentine,* No. 03 Civ. 8985 (VM) (MHD), 2005 WL 2861586, *2 (S.D.N.Y. Nov. 1, 2005). Indeed, "[i]n weighing the legal sufficiency of a complaint, the court must rely solely on the allegations found within the four corners of the pleading, and not on evidence proffered by either party." *Id.*

The complaint enjoys the presumption of truth. *Cooper v. Pate,* 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir. 2003). Setting the bar even higher for the movant, in addition to the complaint's presumption of truth, the Court also must draw every inference in favor of the non-moving party. *Id.*

9

In addition to the complaint, the Court also may consider documents "that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Michael Aram, Inc. v. Laurey*, No. 05 Civ. 8380 (CSH), 2006 WL 510527, *2 (S.D.N.Y. Mar. 1, 2006) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Rule 12(b) mandates, however, that the Court may *not* consider "matters outside the pleadings" on a motion to dismiss for failure to state a claim; if such matters are to be considered in rendering the Court's decision, "the motion must be treated as one for summary judgment under Rule 56." *Chambers*, 282 F.3d at 152.

Based on this standard, the documents properly before the Court on this motion are (1) the Amended Complaint; (2) the complaint filed in the Audit Lawsuit; and (3) the Settlement Agreement and Release from the Audit Lawsuit. *See* Ex. 1 and Ex. A thereto and Ex. 2. Thus, the Court should refuse to consider any other materials submitted with Defendants' motion absent a conversion to summary judgment (which, for the reasons set forth below, would be wholly inappropriate at this juncture). *See, e.g., Michael Aram*, 2006 WL 510527 at *2 (declining to consider representations made in declaration submitted on motion "as that submission clearly does not fall within the enumerated materials to which the Court may look when considering a motion to dismiss under Rule 12(b)(6)") (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *Howard v. Town of Bethel*, 481 F. Supp. 2d 295, 308 (S.D.N.Y. 2007) (stating that "an affidavit of a defendant containing a statement of facts contradicting those in the Complaint" is not among the types of documents a court can consider on a 12(b)(6) motion).

10

Despite the strict prohibition on submitting matters that do not "fall within the enumerated materials to which the Court may look" on a motion to dismiss, *Michael Aram,* 2006 WL 510527 at *2, Defendants' motion relies extensively on representations contained in three affidavits -- one from Defendant Doherty and two from his agents -- to contradict the allegations in the Amended Complaint. *See, e.g.,* Br. at 4-8, 16-17. Recognizing that these affidavits have been improperly submitted on a motion to dismiss, Defendants indicate their "consent" to the Court *sua sponte* converting the motion to one for summary judgment under Rule 56. Br. at 2 n.1.[4]

The Court should decline, however, either to consider Defendants' extrinsic affidavits or to convert this motion to one for summary judgment for at least three independent reasons. *First,* the Court should decline to convert Defendants' motion because *no discovery whatsoever* has been taken. Where, as here, factual issues abound, courts should not convert motions to dismiss but, instead, order discovery to proceed. *See, e.g., D.D. ex rel. V.D. v. New York City Bd. of Educ.,* No. CV-03-2489 (DGT), 2004 WL 633222, *16 (E.D.N.Y. Mar. 30, 2004) (declining to convert motion to dismiss to summary judgment motion and refusing to take statements outside the pleadings into consideration where discovery was at preliminary stage), *vacated in part on*

---

[4] Notably, Defendants' Notice of Motion does not request conversion under Rule 12(b) and they have not cited any authority for the proposition that conversion, at this early pre-discovery stage of the proceedings, would be appropriate. Nor have Defendants submitted a Rule 56.1 statement, which is required on a motion for summary judgment. *See* Local Civ. R. 56.1(a) ("Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.").
  Plaintiffs, therefore, have not submitted "competing affidavits," but respectfully request leave to do so should the Court *sua sponte* convert this motion to one for summary judgment. *See, e.g., Dale v. Hahn,* 440 F.2d 633, 638 (2d Cir. 1971) (error to consider matters outside the complaint, thus converting defendant's motion to dismiss to a motion for summary judgment, without giving plaintiffs the opportunity to present controverting evidence).

11

*other grounds*, 465 F.3d 503 (2d Cir. 2006) *and opinion amended on denial of rehearing*, 480 F.3d 138 (2d Cir. 2007); *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 499 (S.D.N.Y. 2003) (declining to convert motion to dismiss to motion for summary judgment on the basis of a purported general release and ordering further discovery on the applicability and legality of the release).

Given the state of the law, it should come as no surprise that virtually all of the cases upon which Defendants rely to support the proposition that a fraudulent inducement claim can be dismissed on a dispositive motion were decided *after* extensive discovery, confirming that the Court should deny this motion and let the parties proceed to test their claims and defenses. *See, e.g., Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (granting summary judgment after eleven years of litigation, including extensive discovery and several bench trials on discrete issues); *Dunkin' Donuts, Inc. v. Got-a-Lot-a-Dough, Inc.*, No. 04 Civ. 4100 (DRH) (MLO), 2006 WL 3725340, *12 (E.D.N.Y. Dec. 18, 2006) (limiting issues at trial stage by holding certain claims were subject to prior release and not fraudulently induced); *Waksman v. Cohen*, No. 00 Civ. 9005 (WK), 2002 WL 31466417, *13 (S.D.N.Y. Nov. 4, 2002) (granting summary judgment after five years of proceedings in two separate lawsuits); *Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 302-303 (S.D.N.Y. 1997) (granting summary judgment only on record developed after extensive discovery including depositions of the principals of the two companies in the lawsuit who had conducted the settlement negotiations that led to disputed release) *aff'd*, 166 F.3d 1201 (2d Cir. 1998); *Pickwick Comms., Inc. v. Weinberg*, No. 91 Civ. 1642 (AGS), 1994 WL 620950, *2 (S.D.N.Y. Nov. 8, 1994), *aff'd*, 89 F.3d 825 (2d Cir. 1995) (deciding motion for summary judgment based on "undisputed facts in the record" developed during discovery).

12

In yet other cases upon which Defendants rely, the courts declined the invitation to summary adjudication and ordered proceedings to continue. *See, e.g., Calcutti,* 273 F. Supp. 2d at 499) (permitting further discovery on the applicability and legality of a purported general release); *Mangini v. McClurg,* 24 N.Y.2d 556, 568 (1969) (reversing summary judgment for defendants and remanding for trial in view of issues of fact concerning the scope of release).

In one case, relied upon particularly heavily by Defendants in which a claim was barred based upon a prior release, *see* Br. at 10, 11, 12, and 18, the Court was able to decide the claim on a motion to dismiss but only because *no fraudulent inducement claim was alleged. See RBS Holdings, Inc. v. Wells Fargo Century, Inc.,* 485 F. Supp. 2d 472, 479 (S.D.N.Y. 2007) ("Here, RBS does not allege that Wells Fargo fraudulently induced RBS to execute the Release."). Indeed, the court in *RBS Holdings, Inc.* fully recognized that "[i]f a party was fraudulently induced to execute [a] release provision, however, the release is a voidable contract, and the defrauded party may void the release." *Id.* (citation omitted). Here, unlike in *RBS Holdings, Inc.,* fraudulent inducement is precisely what Plaintiffs have alleged.

*Second,* the Court should reject Defendants' affidavits because they would not be admissible on a motion for summary judgment. Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Defendants' affidavits do not meet these basic criteria. They contain statements that are not (and indeed could not be) based on personal knowledge, are hearsay, or both. To illustrate the point, even the most cursory review of defendant Doherty's proffered affidavit establishes that it is almost *entirely* hearsay (often times muti-layered hearsay) and *not* based upon personal

13

knowledge, as would be required for any submission to the Court. *See* Doherty Aff. at ¶ 7 (Rabinowitz reporting to Doherty what Kaming had told him); ¶ 10 (McDonagh reporting to Doherty what Kaming had told him); ¶ 11 (Michael Doherty reporting to Doherty what Fred LeMoine said at a meeting); ¶ 13 (Rabinowitz reporting to Doherty what Kaming had told him); ¶ 14 (indicating what the Union knew); ¶ 15 (indicating what Kaming and Rabinowitz said to each other during settlement negotiations); ¶ 16 (indicating what Kaming and Union officers said to others); ¶ 17 (indicating that Doherty "was aware" that the Union was under pressure from two members to resolve the lawsuit); ¶ 18 (indicating that Rabinowitz never withheld information from the Union).

In short, Defendants' affidavits would not be properly submitted on a motion for summary judgment under the requirements of Rule 56(e). *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) (quoting Rule 56(e) and holding that affidavit did not constitute competent evidence for purposes of summary judgment motion because it was not made on personal knowledge; declining to consider party's contention in affidavit on motion for summary judgment because "Sarno's statement as to what he 'was told' was hearsay that would not be admissible at a trial"); *Schwimmer v. Sony Corp. of Am.*, 637 F.2d 41, 45 n.9 (2d Cir. 1980) ("A hearsay affidavit is a nullity on a motion for summary judgment."); Fed. R. Evid. 801(c). Therefore, Defendants should not be permitted to use them to skirt their heavy burden on a motion to dismiss.

*Third*, Defendants' request for conversion should be declined for the independent reason that summary judgment would not dispose of the Amended Complaint. As discussed in greater detail, *infra*, Defendants' motion, *with or without the affidavits*, raises numerous factual issues that would necessitate the Court making determinations as to credibility and decisions as to

14

material issues of disputed fact. Such determinations would be wholly inappropriate on summary judgment. S*ee Green v. Hamilton Int'l Corp.*, 437 F. Supp. 723, 725 (S.D.N.Y. 1973) (declining to consider extrinsic evidence on motion to dismiss under Rule 12(b)(6) or to convert to summary judgment where proffered evidence failed to resolve all issues of material fact).

## II. THE SETTLEMENT AGREEMENT AND RELEASE DO NOT BAR THIS ACTION BECAUSE THEY WERE FRAUDULENTLY OBTAINED.

When stripped of its hyperbole, rhetoric, attacks on the Union crime victims' good faith, and the inadmissible affidavits, Defendants' motion fails because the Amended Complaint more than adequately alleges fraudulent inducement of the Settlement Agreement. Nevertheless, Defendants persist in their claim that the plain language of the Settlement Agreement (and the Release provided for therein) bars any claims against them as a matter of law. Br. at 11-13.

Simply put, Defendants are wrong. Here, the Union has properly alleged all of the necessary elements of a claim that Defendants fraudulently induced them to enter into the Settlement Agreement. Ex. 1 ¶¶ 48-55. Accordingly, the Agreement and Release provided for therein are vitiated and subsequent claims are *not* barred. *See, e.g., Urfirer v. Cornfeld*, 408 F.3d 710, 723 (11th Cir. 2005) (citing New York law and stating "[a] waiver or release of rights does not preclude a party from claiming fraud in the inducement of the very instrument by which the party waived his rights"); *De Pace v. Matsushita Elec. Corp. of Amer.*, 257 F. Supp. 2d 543, 557 (E.D.N.Y. 2003) (refusing to dismiss complaint on the basis of releases plaintiffs had executed where plaintiffs alleged defendants had induced them to execute releases by fraudulently misrepresenting benefits owed plaintiffs); *Goldsmith v. Nat'l Container Corp.*, 287 N.Y. 438, 442 (1942) (holding releases given by plaintiff do not bar action where plaintiff seeks damages due to alleged fraudulent misrepresentations and concealments that induced him to give

15