# APPENDIX

# EXHIBIT 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------x

ROBERT LEDWITH and ALFRED G. GEROSA,        Case No. 07 Civ. 4237 (DGT)
as Trustees of the Local #46, et al.,

                             Plaintiffs,
                                                      **AFFIDAVIT**

      - against -

CHARLES DOHERTY, UNITED STATES REBAR,
INC., and JOHN DOES 1-10,

                             Defendants
------------------------------------------x

STATE OF CALIFORNIA )
                     ) ss.:
COUNTY OF ORANGE )

       CHARLES DOHERTY, being duly sworn, deposes and says:

       1. I was President and 50% owner of United States Rebar, Inc. (U.S. Rebar) from its inception in 1994 until 2005, when the company ceased to operate.

       2. Metal Lathers Local 46 (Local 46) is a trade union that U.S. Rebar had a collective bargaining agreement with.

       3. In the summer of 2005, Local 46 initiated a lawsuit against U.S. Rebar for unpaid union benefits.

       4. Michael Rabinowitz is an attorney who represented U.S. Rebar in the Local 46 lawsuit, and Joseph Kaming is the attorney who represented Local 46.

       5. On September 12, 2005, I entered a guilty plea to a criminal information for one count of money laundering conspiracy. The money laundering conspiracy was centered on my activities on behalf of U.S. Rebar, specifically for cashing checks to pay both union and non-union employees off the books and also for participating in M/WBE fraud.

       6. I was a cooperating defendant and the case was directed to be sealed at the time of my plea.

       7. On or about September 19, 2005, one week after my plea, Michael Rabinowitz called me to tell me that in a court conference pertaining to the Local 46 lawsuit, Joseph Kaming told him that the union knew that I had one week earlier plead guilty to Money Laundering.

8. Since my case was supposed to be sealed, I was shocked that the union was aware of my plea. As soon as I was able, I checked PACER and saw that my case was in fact not sealed.

9. On or about September 20th, I called IRS Special Agent Alan Katz to tell him that my case was open and not sealed. I followed up my telephone call with a fax to Special Agent Katz. The fax contained information about my case that I printed from PACER. Soon after my communication with Special Agent Katz, the record was sealed.

10. In early October 2005, Thomas McDonagh, a CPA who was representing U.S. Rebar in an audit review relating to the Local 46 lawsuit, called me to tell me that Joseph Kaming had threatened a RICO suit against U.S. Rebar and him personally if he did not agree to the audit results proposed by Local 46.

11. In late October 2005, Michael Doherty, my brother and a Local 46 member, called me to tell me that Local 46 Business Agent Fred Lemoine was campaigning for reelection on the Newtown Creek construction project. While he had the attention of my brother and other Local 46 and Local 731 members, Mr. Lemoine talked about specific details of my criminal case. Specifically, Mr. Lemoine was telling the gathered employees that I had to pay a $500,000.00 forfeiture to the Government within the next month.

12. In January, 2006, while attending a reception at the Las Vegas Hilton during the World of Concrete convention, I had a conversation with Local 46 Business Agent Terrence Moore. Mr. Moore told me that he "knew about my money laundering conviction" and that he knew that I was "talking to the Government about Local 46". Further, Mr. Moore followed with an implied threat by telling me that they "knew where my family lived in California."

13. Some time in February, 2006, Michael Rabinowitz began settlement negotiations on behalf of U.S. Rebar with Joseph Kaming to settle the Local 46 lawsuit. Mr. Rabinowitz told me that Mr. Kaming repeatedly threatened to file a civil RICO action against both the company and me personally if we did not reach a settlement.

14. I was advised by Mr. Rabinowitz that I had no personal liability for U.S. Rebar's unpaid union benefit contributions. Further Mr. Rabinowitz advised me that one option was to walk away from the table and to let Local 46 get a default judgment against the company. However, since I knew that Local 46 was aware of and had specific information about my money laundering conviction and was using that information as leverage, I had no choice but to entertain some type of settlement.

15. Throughout the settlement negotiations, Local 46 and Mr. Kaming continued to threaten me with civil RICO unless we settled the lawsuit. Local 46 used the leverage of my money laundering conviction

to reach a settlement where I was added personally to the lawsuit and where I was to personally guarantee the settlement. In exchange for the settlement and my personal guarantee, Mr. Rabinowitz demanded a full and general release for both me and the company. The release was negotiated as part of the settlement agreement with the full understanding that if we settled this matter, Local 46 would not take any further action against me or the company, specifically, that they would not pursue a civil RICO action against U.S. Rebar or me.

16. At all times during the settlement negotiations, Local 46 was aware of my money laundering conviction. Mr. Kaming and Local 46 officers made multiple public and private references to my conviction in addition to multiple threats of a possible Civil RICO action.

17. Local 46 settled having full information about U.S. Rebar and my conviction. At the time of the settlement negotiations, I was aware that Local 46 was under pressure from its members, specifically William Setters Jr. and William Setters Sr., to resolve and collect the unpaid benefits that were at the center of the lawsuit. It was clear to me at the time that Local 46 was seeking to settle so that they could mute the political fallout resulting from individual members complaining about unpaid benefits. Further, I believed that Local 46 settled because they did not want to be in the position to confront and be forced to discipline the Local 46 members that were paid off the books by U.S. Rebar.

18. During the settlement talks, neither Mr. Rabinowitz nor I denied, concealed, or in any way withheld information from Local 46. It is impossible to withhold information from someone if they already have the information. Local 46's claim that fraud was used to induce the settlement is a bold-faced lie.

19. Subsequent to operating U.S. Rebar, I have formed and operate a successful non-union rebar company. Local 46's sole motivation in this and other actions is to hurt me financially and to attempt to put me out of the rebar business.

20. The final settlement payment was made on or about November 27, 2007. I have, therefore, fulfilled all of my obligations under the settlement agreement.

CHARLES DOHERTY

Sworn to before me this
26th day of December, 2007

Notary Public

ROBERT A. CUMMINS
COMM. # 1566563
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. APRIL 4, 2009