IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- :
                                                                 :
NEW YORK REBAR INSTALLATION, INC. and                            :
UNITED STATES REBAR, INC.,                                       :
                                                                 :
                    Plaintiffs,                                  :
                                                                 :
            - against-                                           :     NO. 07-CIV-7607(CM)
                                                                 :
ROBERT   LEDWITH,   TERRENCE   MOORE,                             :
FRED LEMOINE, KEVIN KELLY, ALFRED G.                             :
GEROSA, KEVIN O'BRIEN, JOHN BRUNETTI,                            :
and DENNIS ULVERSOY, as TRUSTEES of the                          :
LOCAL #46 METALLIC LATHERS UNION AND                             :
REINFORCING   IRON   WORKERS   PENSION                           :
FUND,                                                            :
                                                                 :
                    Defendants.                                  :
                                                                 :
---------------------------------------------------------------- :
                                                                 :
ROBERT   LEDWITH,   TERRENCE   MOORE,                             :
FRED LEMOINE, KEVIN KELLY, ALFRED G.                             :
GEROSA, KEVIN O'BRIEN, JOHN BRUNETTI,                            :
and DENNIS ULVERSOY, as TRUSTEES of the                          :
LOCAL #46 METALLIC LATHERS UNION AND                             :
REINFORCING   IRON   WORKERS   PENSION                           :
FUND,                                                            :
                                                                 :
                    Counterclaim Plaintiffs,                     :
                                                                 :
            - against -                                          :
                                                                 :
NEW YORK REBAR INSTALLATION, INC. and                            :
UNITED STATES REBAR, INC., and CHARLES                           :
DOHERTY,                                                         :
                                                                 :
                    Counterclaim Defendants.                     :
----------------------------------------------------------------

**COUNTERCLAIM DEFENDANT CHARLES DOHERTY'S
MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   PROCEDURAL BACKGROUND AND PRIOR RELATED PROCEEDINGS ..............3

III.  MATERIAL FACTS .....................................................................................................5
      A.    US Rebar's Collective Bargaining Agreement ....................................5
      B.    The Assessment of Withdrawal Liability ............................................5
      C.    The Criminal Case ...............................................................................6
      D.    The Delinquent Contribution Lawsuit .................................................6
      E.    The Settlement Agreement and the Release .........................................7
      F.    The Trustees' Counterclaim..................................................................8

IV.   STANDARD OF REVIEW ...........................................................................................9

V.    ARGUMENT ...............................................................................................................10
      A.    Controlling Shareholders and Officers Are Not "Employers" for Purposes
            of Collecting Pension Plan Withdrawal Liability ................................10
            1.    The General Rule ......................................................................10
            2.    The Second Circuit's decision in Leddy does not apply to
                  withdrawal liability. .................................................................12
      B.    The Settlement Agreement and the Release Bar Count II of the
            Counterclaim.........................................................................................15
            1.    The Settlement Agreement and the Release Bar Claims for All
                  Matters Up to and Including June 30, 2005...............................15
            2.    Count II of the Trustees' Counterclaim is Based Exclusively on
                  Events that Occurred on or Before June 30, 2005. ...................15
      C.    Doherty's Conduct After June 30, 2005 Does Not and Cannot Establish
            That He is an "Employer" for Purposes of MPPAA.............................16

VI.   CONCLUSION.............................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Coughlin*, 64 F.3d 77 (2d Cir. 1995) ................................................................. 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 9, 10

*Building Service 32B-J Health Fund v. McCaffree,* 225 Fed. Appx. 25 (2d Cir. 2007) ................................................................................................................... 17

*Canario v. Lidelco, Inc.,* 782 F. Supp. 749 (E. D. N. Y. 1992) ............................... 12, 14

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................................. 9

*Cement and Concrete Workers District Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Lollo*, 148 F. 3d 194 (2d Cir. 1998) ..... 17

*Connors v. P & M Coal Co.,* 801 F. 2d 1373 (D.C. Cir. 1986) .................................... 11

*Consorcio Prodipe S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178 (S. D. N. Y. 2008) ................................................................................................................... 15

*DeBrecceni v. Graf Brothers Leasing, Inc.*, 828 F. 2d. 877 (1st Cir. 1987) ............... 11

*Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423 (2d Cir. 2001), *cert. denied,* 534 U.S. 891 (2001) ....................................................................................................... 9

*Glover v. S. D. R. Cartage Company, Inc.,* 681 F. Supp. 1293 (N. D. Ill. 1988) ......... 12, 14

*Korea Shipping Corp. v. New York Shipping Association*, 880 F. 2d 1531 (2d Cir. 1989) ........................................................................................... 11, 13, 14, 16

*Leddy v. Standard Drywall, Inc.*, 875 F. 2d 383 (2d Cir. 1989) ............................... passim

*Local 46 Metallic Lathers Union and Reinforcing Iron Workers Welfare Trust, et al v. United States Rebar, Inc.,* No. CV-05-2356 ...................................................... 1

*Nachman Corp. v. Pension Benefit Guarantee Corp.*, 446 U.S. 359 n. 14 (1980) ....... 11

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79 (2d Cir. 2004) ............................... 9

*Robert Ledwith, et al. v. Charles Doherty, et al.,* No. 07-CV-4237 (CBA) .................. 4

*Sasso v. Cervoni*, 985 F. 2d 49 (2d Cir.), *cert. denied*, 508 U.S. 973 (1993) ............... 16

*Scarbrough v. Perez,* 870 F. 2d 1079 (6th Cir. 1989) ................................................... 11

*Sun-Up Coal Co., Inc.,* 634 F. Supp. 13 (D. C. D. C. 1985) .................................... 12, 14

**Statutes**

29 U.S.C. § 1132 ......................................................................................................... 12

29 U.S.C. § 1381(b)(2) ................................................................................................. 3

29 U.S.C. § 1392(a) ..................................................................................................... 14

29 U.S.C. §§ 1002 (5) and (9) ..................................................................................... 11

29 U.S.C. §§ 1381 *et seq.*...........................................................................................................10

**Rules**

Fed. R. Civ. P. 56(c) .................................................................................................................9

Fed. R. Civ. P. 56(e)(2)..............................................................................................................9

## I.    **INTRODUCTION**

The Court should grant partial summary judgment in favor of Charles Doherty

("Doherty") and dismiss Count II of the Defendants/Counterclaim Plaintiffs' (collectively the

"Trustees") Counterclaim.    Count II alleges that Doherty is an "employer" and, therefore,

personally responsible for the payment of the withdrawal liability the Trustees assessed against

Plaintiff United States Rebar, Inc. ("US Rebar") because of Doherty's "total operational control

over US Rebar and its alter-ego NY Installation in a fraudulent, criminal, and otherwise illegal

manner, all as part of his continuing efforts to defraud the Plan."    Declaration of David J.

Laurent, Appendix Exhibit 1 (Counterclaim, ¶92).[1]    As set forth more fully below, however,

Count II should be dismissed as a matter of law because courts across the country uniformly hold

that corporate shareholders and officers cannot be held personally responsible for withdrawal

liability as "employers."

Count II also should be dismissed because a court-approved March 10, 2006 Settlement

Agreement and a corresponding Release in prior litigation captioned *Local 46 Metallic Lathers*

*Union and Reinforcing Iron Workers Welfare Trust, et al v. United States Rebar, Inc.,* No. CV-

05-2356, in the United States District Court for the Eastern District of New York ("Delinquent

Contribution Lawsuit") bar the Trustees from asserting that claim.    The Settlement Agreement

states in pertinent part as follows:

> 1B.    Upon satisfaction of the terms, as provided herein, of this
> stipulation and the completing of all payments, the Funds shall provide United
> States Rebar, Inc. and <u>Charles S. Doherty</u> a general release in the form attached
> hereto.  Likewise, United States Rebar, Inc. and Charles S. Doherty shall provide
> to the Funds a general release in the form attached hereto.
>
> 1C.    So long as the payments as provided by the terms hereunder, are
> current, <u>the Funds will take no action against United States Rebar, Inc. and</u>

---

[1]    Hereinafter, documents attached to the Declaration of David J. Laurent will be
identified as "Appendix, Exhibit ___."

<u>Charles S. Doherty for any matters previous to June 30, 2005</u> and United States Rebar, Inc. will take no action against the Funds for any matters previous to June 30, 2005. (Emphasis added.)

Appendix, Exhibit 2 (Settlement Agreement).

The Release referred to in the Settlement Agreement similarly states that, upon the payment of the settlement funds, <u>all of which have been paid</u>, the Fund (the Releasors):

> releases and discharges <u>CHARLES S. DOHERTY</u> and UNITED STATES REBAR, INC., the RELEASES, RELEASEES' heirs, executors, administrators, successors and assigns <u>from all actions, causes of action, suits,</u> debts dues, sums of money, accounts, reckonings, bonds, bills, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, <u>which against the RELEASEES, the RELEASORS, RELEASORS' heirs, executors, administrators, successors and assigns every had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE. For all those matters up to and including June 30, 2005</u>. (Emphasis added.)

Appendix, Exhibit 3 (Release).

As set forth more fully below, <u>all</u> of the allegedly fraudulent conduct that supports (or could support) the Trustees' allegations in Count II occurred before June 30, 2005.[2] Therefore, even if Doherty could be deemed an "employer" for purposes of withdrawal liability, the Settlement Agreement and the Release collectively bar the Trustees' from asserting that claim.

Finally, the predicate to the Trustees' assertion that Doherty is an "employer" is that Doherty allegedly defrauded them out of certain contributions. However, that rationale cannot possibly apply after June 30, 2005. First, US Rebar did not have an obligation to contribute to

---

[2]    The Release states that it releases Doherty from all claims "whatsoever from the beginning of the world to the day of the date of this RELEASE [July 29, 2008]. For all those matters up to and including June 30, 2005." Thus, on its face, the Release purports to release Doherty for all matters up through July 29, 2008, the day the Trustees signed the Release. Nonetheless, the Trustees may argue that the Release only applies to matters up through June 30, 2005. However, this is not a material dispute of fact or law because Court II should be dismissed even if the Trustees' interpretation prevails. Therefore, for purposes of Doherty's motion for

the Fund after its last collective bargaining agreement was terminated effective June 30, 2005. Second, Doherty did not make any fraudulent statements to the Trustees after June 30, 2005 on which they relied to their detriment.   Accordingly, the Court should grant partial summary judgment in favor of Doherty and dismiss Count II of the Trustees' Counterclaim.

## II.   PROCEDURAL BACKGROUND AND PRIOR RELATED PROCEEDINGS

The Trustees assessed withdrawal liability against US Rebar in January 2007.   The Trustees reasoned that US Rebar withdrew from the Fund as of July 1, 2005, because US Rebar's alleged alter ego, New York Rebar Installation, Inc. ("NY Install"), continued to perform work within the jurisdiction of the US Rebar's expired collective bargaining agreement, without renewing the obligation to contribute to the Fund.   Appendix, Exhibit 4 (Trustees' letters assessing withdrawal liability).

US Rebar and NY Install subsequently initiated this action to obtain a declaration that they did not withdraw from the Local #46 Metallic Lathers Union and Reinforcing Iron Workers Pension Fund ("Fund") under Section 4203(b)(2) of the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381(b)(2), because they are not alter egos and because NY Install is not performing work in the jurisdiction of US Rebar's expired collective bargaining agreement.

The Trustees filed an Answer and a Counterclaim.   Count I of the Counterclaim alleged that US Rebar and NY Install are alter egos, and Count II alleged that Doherty is an "employer" and, therefore, personally responsible for the subject withdrawal liability.   Appendix, Exhibit 1 (Counterclaim).   US Rebar, NY Install, and Doherty filed a Reply to Counterclaim which, among other things, raised the Settlement Agreement and the Release as an affirmative defense.

---

partial summary judgment, and without waiving any arguments, Doherty will assume that the Release applies only to matters up through June 30, 2005.

Shortly after filing the Counterclaim, the Trustees filed a separate lawsuit against US Rebar and Doherty in the Eastern District of New York, captioned *Robert Ledwith, et al. v. Charles Doherty, et al.,* No. 07-CV-4237 (CBA) ("RICO Lawsuit"). The Trustees' Amended Complaint in the RICO Lawsuit asserted claims under the Racketeer Influenced and Corrupt Organizations Act, the Employee Retirement Income Security Act, the Labor Management Relations Act, and common law fraud. The Trustees alleged that in September 2005, Doherty had pled guilty to a money laundering scheme by which he cashed certain fraudulent checks and then paid his employees for weekend overtime work in cash during the period of approximately 1998 through mid-2003, but fraudulently did not contribute to the Fund for the weekend work the employees had performed. Appendix, Exhibit 5 (Trustees' Amended Complaint in the RICO Lawsuit).

US Rebar and Doherty filed a motion to dismiss the RICO Lawsuit, citing the Settlement Agreement and the Release. Appendix, Exhibit 6 (US Rebar's and Doherty's Notice of Motion to Dismiss). The Trustees opposed the motion, arguing that the Settlement Agreement and the Release had been procured by fraud. Exhibit 7 (Trustees' Opposition to Motion to Dismiss).

After conferring with the Court, US Rebar and Doherty restyled their motion as one for summary judgment and served it on the Trustees, along with supporting affidavits and declarations demonstrating that the Trustees clearly knew of Doherty's cash payments when they signed the Settlement Agreement. Appendix, Exhibit 8 (US Rebar's and Doherty's Notice of Motion for Summary Judgment); Exhibit 9 (Affirmation of Michael Rabinowitz); Exhibit 10 (Affidavit of Charles Doherty); and Exhibit 11 (Affidavit of Thomas McDonough). Shortly before the Trustees were to file an opposition brief, however, the Trustees agreed to dismiss the RICO Lawsuit and the parties filed a stipulation of dismissal on or about June 26, 2008.

Appendix, Exhibit 12 (Stipulation). On July 29, 2008, the Trustees signed and delivered the Release, as required by the Settlement Agreement. Appendix Exhibit 3 (Release).

## III.    MATERIAL FACTS

### A.    US Rebar's Collective Bargaining Agreement

US Rebar signed several collective bargaining agreements with Local 46 (the "Union"), each of which obligated US Rebar to contribute certain amounts to the Fund based on the hours worked by its Union-represented employees; however, US Rebar terminated its last collective bargaining agreement with the Union effective as of June 30, 2005. Appendix, Exhibit 13 (US Rebar's termination notice dated February 24, 2005). Thereafter, US Rebar lawfully refused to negotiate a successor agreement with the Union. Appendix, Exhibit 14 (US Rebar's letters to the Union dated April 6, April 18, April 21, and April 28, 2005). The Union challenged the validity of US Rebar's conduct by filing an unfair labor practice change; however, the Union eventually withdrew the charge. Appendix, Exhibit 15 (Unfair Labor Practice Charge and corresponding approval of the withdrawal of the Charge).

Accordingly, there can be no dispute that neither US Rebar, nor its alleged alter ego NY Rebar, has had any obligation to contribute to the Fund under any collective bargaining agreement for work performed after June 30, 2005.

### B.    The Assessment of Withdrawal Liability

By letter dated January 11, 2007, the Trustees assessed withdrawal liability against US Rebar, claiming that US Rebar withdrew from the Fund on July 1, 2005. On August 1, 2007, the Trustees rejected US Rebar's request for reconsideration and reaffirmed the assessment of withdrawal liability. Appendix, Exhibit 4. (Trustees' withdrawal liability correspondence to US Rebar).

### C.     The Criminal Case

On or about June 30, 2005, the United States Attorney's Office for the Eastern District of New York filed criminal information against Doherty, alleging, among other things, that Doherty, through US Rebar, had engaged in a money laundering conspiracy between approximately January 1, 1998 and July 31, 2002, related to a check-cashing scheme intended to pay US Rebar's employees in cash "off the books".  Appendix, Exhibit 16 (Information).  On September 12, 2005, Doherty pled guilty to one count of a money laundering conspiracy.  Appendix, Exhibit 10 (Doherty Aff. at ¶5).

### D.     The Delinquent Contribution Lawsuit[3]

The Trustees filed the Delinquent Contribution Lawsuit against US Rebar on or about May 17, 2005.  Notably, the Trustees did not sue Doherty.  Appendix, Exhibit 17 (Delinquent Contribution Lawsuit Docket Sheet).

In the days and weeks following Mr. Doherty's guilty plea, the Trustees and their agents repeatedly communicated both their knowledge of that guilty plea and their threat to assert RICO claims against Doherty and US Rebar if their settlement demands in the Delinquent Contribution Lawsuit were not met.  These communications included:

- In late September 2005, Mr. Kaming told Mr. Rabinowitz at a conference before a Magistrate that "the Funds were aware that Doherty had a pending criminal matter."  Appendix, Exhibit 9 (Rabinowitz Aff. at ¶4).

- At a meeting in early October 2005, attended by Thomas E. McDonagh, US Rebar's accountant, Mr. Kaming, and plaintiffs' accounting firm, Audit Associates, Mr. Kaming threatened Mr. McDonagh that if US Rebar did not accept plaintiffs' audit conclusions, plaintiffs would imminently file a RICO suit against US Rebar and

---

[3]  Given that the Trustees just abandoned the RICO Lawsuit in the face of US Rebar's and Charles Doherty's evidence that they knew of the cash payments when they signed the Settlement Agreement, Doherty assumes that the Trustees will not again attempt to challenge the validity of the Settlement Agreement and Release.  Out of an abundance of caution, however, Doherty is attaching the affidavits and declarations his counsel served on opposing counsel in the RICO Lawsuit in the event the Trustees attempt to resurrect that issue.

Mr. McDonagh personally.  Appendix, Exhibits 10 (Doherty Aff. at ¶10); Exhibit 11 (McDonagh Aff. at ¶¶4-5);

- In late October 2005, a Business Agent for the Union (and a Trustee herein), Fred Lemoine, reiterated to Michael Doherty, Doherty's brother, specific details of the criminal case, including the fact that Doherty was to be subjected to a $500,000.00 forfeiture to the government within the next month.  Appendix, Exhibit 10 (Doherty Aff. at ¶11).

- In January 2006, while attending a reception at the Las Vegas Hilton during the World of Concrete convention, Doherty spoke with another Union Business Agent (and another Trustee herein), Terrence Moore.  Mr. Moore told Doherty that he "knew about [his] money laundering conviction" and that he knew that Doherty was "talking to the Government about Local 46."  Appendix, Exhibit 10 (Doherty Aff. at ¶12).

- At numerous times during settlement negotiations between counsel, which commenced in February 2006, Mr. Kaming threatened US Rebar and Doherty with additional legal action, including civil RICO claims.  Appendix, Exhibit 9 (Rabinowitz Aff. at ¶¶4, 9, and 18).

Prior to settling the Delinquent Contribution Lawsuit, the Trustees were thus acutely aware of two things: (1) that Doherty had just pled guilty to a money laundering conspiracy related to paying employees in cash and "off the books;" and (2) that they could have alleged fraud and claimed additional contributions in the Delinquent Contribution Lawsuit.

### E.    The Settlement Agreement and the Release

Against the backdrop of the criminal matter and the Trustees' overt threats, counsel for the parties nevertheless continued to discuss a possible settlement of the Delinquent Contribution Lawsuit.  Appendix, Exhibit 9 (Rabinowitz Aff. at ¶6); Exhibit 10 (Doherty Aff. at ¶¶13, 14) Ultimately, on March 10, 2006, the Trustees, US Rebar, and Doherty executed the Settlement Agreement and the Court approved the same to resolve the Delinquent Contribution Lawsuit. Appendix, Exhibit 2.  Among other things, the Settlement Agreement provided that the caption would be amended to add Doherty as a defendant and that Doherty personally guaranteed the payment of the settlement amount.  Appendix, Exhibit 2, ¶¶1A and 8.

Thereafter, US Rebar and/or Doherty made each settlement payment on or ahead of schedule and ultimately paid the balance in full ahead of schedule by delivering the payment to the Trustees' counsel (as an escrow agent) on November 27, 2007.  By agreement of the parties, the Trustees' counsel released the final payment to the Trustees on July 14, 2008.  Appendix, Exhibit 10 (Doherty Aff. at ¶20; Exhibit 18 (Rabinowitz letter to Kaming and Kaming letter to Rabinowitz).   On July 29, 2008, the Trustees executed the Release.   Appendix, Exhibit 3 (Release).

### F.    <u>The Trustees' Counterclaim</u>

The Trustees' Counterclaim in this case alleges in pertinent part as follows:

61.    <u>Doherty has acknowledged under oath that between 1997 and into mid-2003, he orchestrated a criminal scheme</u> to pay US Rebar's Union workers a substantial portion of their wages in cash.   Doherty's admitted purpose in perpetrating the unlawful scheme was to avoid having to make the CBA-mandated benefit payments to, and fraudulently conceal the non-payment of such benefits from, the Plan.

****

65.    <u>In or about late 2004, and as further part of his extended and continuing scheme to defraud the Plan, Doherty formed NY Installation</u>.  Doherty formed NY Installation as an alter ego of US Rebar under a different name and using non-Union labor, all in an effort to conceal and disguise from the Plan the fact that withdrawal liability had been incurred ….

****

88.    Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381 - 1453, the term "employer" means a person who is obligated to contribute to a multiemployer pension plan.

89.    Beginning in or about 1994 and at all time relevant herein, US Rebar was obligated to contribute to the Plan.   Therefore, US Rebar was an "employer" within the meaning of ERISA, as amended by MPPAA.

90.    At all times relevant herein, Doherty was a corporate officer of and exercised total operational control over US Rebar and its alter-ego NY Installation.

- 8 -

91.     At all times relevant herein, Doherty was directly responsible for US Rebar's and its alter-ego NY Installation's failure to make contributions to the Plan, in accordance with the terms and conditions of the CBA.

92.     At all relevant times herein, Doherty has exercised his total operational control over US Rebar and its alter-ego NY Installation in a fraudulent, criminal, and otherwise illegal manner, all as part of his continuing efforts to defraud the Plan.

93.     Accordingly, in addition to US Rebar and its alter-ego NY Installation, Doherty was also an "employer" within the meaning of ERISA, as amended by the MPPAA, and, as such, is jointly and severally liable with US Rebar and NY Installation for the Withdrawal Liability.  (Emphasis added.)

Appendix, Exhibit 1 (Counterclaim).

IV.     **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  The Court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Although the Court is required to view the evidence in the light most favorable to the nonmoving party, *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995), the non-moving party cannot rest "merely on allegations or denials" but must instead "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (non-moving parties "may not rely on conclusory allegations or unsubstantiated speculation") (internal quotation marks omitted), *cert. denied,* 534 U.S. 891 (2001); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (non-movant "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial'").  No genuine issue exists "unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

## V.    ARGUMENT

Count II of the Complaint fails to state a claim against Doherty because, as a matter of law, controlling shareholders and officers of a corporate employer that withdraws from a multiemployer pension plan cannot be held personally for responsible for the withdrawal liability on the theory that they too are "employers."  Moreover, even if the Trustees could establish that Doherty is an "employer" for purposes of collecting withdrawal liability based on his conduce before June 30, 2005, the broad, unambiguous language of the Settlement Agreement and the Release bar them from asserting that claim.  Finally, there are no facts after June 30, 2005 that could support the Trustees assertion that Doherty is an "employer" for purposes of collecting US Rebar's withdrawal liability.  Accordingly, the Court should grant partial summary judgment in favor of Doherty and dismiss Count II of the Trustees' Counterclaim.

### A.    Controlling Shareholders and Officers Are Not "Employers" for Purposes of Collecting Pension Plan Withdrawal Liability

As set forth more fully below, Doherty cannot be considered an "employer" for purposes of collecting withdrawal liability as a matter of law.

#### 1.    The General Rule

Title IV of ERISA, as amended by Multiemployer Pension Plan Amendments Act, 29 U.S.C. §§ 1381 *et seq* , does not define the term "employer."  Moreover, although Title I of ERISA defines the term "employer," that definition does not apply to withdrawal liability under Title IV.  Title I of ERISA states that "[f]or purposes of this title," the term "employer" means "any person acting directly as an employer, or indirectly in the interest of an employer," and the

term "person" means "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, associate, or employee organization." 29 U.S.C. §§ 1002 (5) and (9). Significantly, neither the term "employer" nor the term "person" includes corporate shareholders or officers.

Moreover, in *Nachman Corp. v. Pension Benefit Guarantee Corp.*, 446 U.S. 359, 370 n. 14 (1980), the Supreme Court observed that because Congress made some Title I definitions applicable to Title IV, but not others, "[t]his specific incorporation suggests that Title I definitions do not apply elsewhere in the Act of their own force..." Thus, Title I's definition of the term "employer" does not apply to withdrawal liability. *Korea Shipping Corp. v. New York Shipping Association,* 880 F. 2d 1531, 1536 (2d Cir. 1989). Instead, for purposes of withdrawal liability, the Court of Appeals for the Second Circuit has determined that term "employer" means "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Korea Shipping*, 880 F. 2d. at 1537.

Nonetheless, courts across the country have uniformly ruled that for purposes of withdrawal liability, the term "employer" <u>does not</u> include a controlling shareholder or officer of a corporation that had an obligation to contribute to a plan. *See Scarbrough v. Perez,* 870 F. 2d 1079, 1084 (6th Cir. 1989) ("Nothing in the either the language or the purpose of the 1980 amendments by which this section [1381] was added can justify the compromise that the plaintiff would have us make in the corporate principle of limited liability."); *DeBrecceni v. Graf Brothers Leasing, Inc.*, 828 F. 2d. 877, 878 (1st Cir. 1987) ("We conclude that under the general purposes of the Multi-Employer Pension Plan Amendments Act of 1980 ('MPPAA'), individual liability for corporate withdrawal liability should be governed by general principles of corporate law."); *Connors v. P & M Coal Co.,* 801 F. 2d 1373, 1378 (D.C. Cir. 1986)("[W]e conclude that

it was error for the district court to hold that Daugherty and Hall are statutory employers within the meaning of Title IV."); *Canario v. Lidelco, Inc.,* 782 F. Supp. 749, 759 (E. D. N. Y. 1992) ("Accordingly, the Court finds that Congress did not intend to impose individual liability for a corporation's withdrawal liability absent circumstances which would permit a 'piercing of the corporate veil.'"); *Glover v. S. D. R. Cartage Company, Inc.,* 681 F. Supp. 1293, 1297 (N. D. Ill. 1988) ("Consequently, we hold that the Baliches are not liable for S. D. R.'s withdrawal liability payments solely due to their positions as controlling stockholders and officers."); *Sun-Up Coal Co., Inc.,* 634 F. Supp. 13, 17 (D. C. D. C. 1985) ("There is nothing in the statutory language or legislative history which indicates that Congress intended the corporate identity to be disregarded and corporate officers and shareholders held personally liability for withdrawal liability.").

Additionally, the Pension Benefit Guaranty Corporation ("PBGC") reached the same conclusion. In *Opinion Letter 83-038*, a copy of which is attached hereto as Exhibit 1, the PBGC stated that "[w]ith regard to your question as to individual shareholder responsibility for withdrawal liability, ERISA has no special rules regarding shareholder or officer liability. Accordingly, this issue is usually determined by State Law, which generally provides that shareholders are not liable for the debts of a corporation."

   2.  **The Second Circuit's decision in *Leddy* does not apply to withdrawal liability.**

The Court of Appeals for the Second Circuit has not yet ruled on whether, for purposes of collecting withdrawal liability, the term "employer" includes a controlling shareholder or officer of a corporate employer that withdrew from the plan; however, the Court has ruled that for purposes of collecting delinquent contributions under Section 502 of ERISA, 29 U.S.C. § 1132, a controlling corporate official who criminally defrauds or conspires to defraud a benefit fund to

conceal the amount of contributions that were due can be personally liable <u>for the delinquent</u> <u>contributions</u>. *Leddy v. Standard Drywall, Inc.,* 875 F. 2d 383 (2d Cir. 1989).

The Trustees will likely argue that (1) under *Leddy,* Doherty, through his cash payments to employees and US Rebar's corresponding failure to contribute to the Fund for the subject work, defrauded the Fund and, therefore, Doherty has an obligation to contribute to the Fund, and (2) under *Korea Shipping*; the fact that Doherty has an obligation to contribute to the Fund means that he is an "employer" for purposes of collecting withdrawal liability. Nonetheless, the Court should reject any such argument because *Leddy* and *Korea Shipping* have not been and should not be combined to circumvent the general rule and impose personal responsibility for corporate withdrawal liability.

First, *Leddy* involved a claim for <u>delinquent contributions under Title I</u> of ERISA, rather than a claim for <u>withdrawal liability under Title IV.</u> As explained above, the Title I's definition of "employer" simply does not apply to claims for withdrawal liability and nothing in *Leddy* suggests that the Court was fashioning a standard that also was intended to apply to withdrawal liability.

Second, *Leddy* did not hold that the defrauding corporate officer was an "employer" or that the officer had a <u>contractual obligation</u> to contribute to the plan. Instead, the Court ruled only that the defrauding corporate officer could be held responsible for the <u>corporation's breach</u> <u>of its contractual obligation to contribute to the plan</u>. Thus, *Leddy* does not establish that Doherty had a contractual obligation to contribute to the Fund.

Third, the term "employer," as defined in *Korea Shipping,* applies only to corporate employers that have a <u>contractual obligation</u> to contribute to the plan under a collective bargaining agreement. In *Korea Shipping*, the subject <u>companies</u> contractually agreed to and

did, in fact, contribute to the plan as required by a collective bargaining agreement.  Indeed, as

the Court observed, "the determination that Korea and Delta were subject to withdrawal liability

was firmly bottomed on the express terms of the GCA [the General Cargo Agreement]."  880 F.

2d at 1540.  Likewise, in *Canario* (a post-*Leddy* decision)*,* the Court, citing *Korea Shipping,*

observed that the Second Circuit held "the 'obligation to contribute' definition contained in 29

U.S.C. § 1392(a) is to be used in determining whether a business entity is responsible for

withdrawal liability, but has not applied, nor indicated that it would apply such a definition to

individual shareholders or officers of a corporation."  782 F. Supp. 757.

Fourth, there are substantial policy reasons for not applying *Leddy* to withdrawal liability

cases.  As the Court in *Glover* explained:

> Unlike suits brought to collect delinquent contributions or unpaid wages,
> where those failing to contribute are fully accountable for not doing so, in the
> withdrawal liability context individuals may be entirely free of fault, yet upon the
> employer's withdrawal from the pension plan, the plan may still have unfunded
> vested benefits which result in a liability assessment.  Thus, the reason for holding
> individuals personally liable as employers for unpaid wages or pension
> contributions is absent when assessing withdrawal liabilities.  (Emphasis added.)

681 F. Supp. at 1296.  *See also Sun-Up,* 634 F. Supp. at 16, where the Court similarly observed

that "[u]nlike the actions brought to collect delinquent pension contributions or unpaid wages,

withdrawal liability situations often occur in the absence of any nonfeasance or misfeasance by

any individual with fiduciary responsibilities.  Accordingly, the rationale for holding individuals

personally liable as employers for unpaid wages or pension contributions is often inapplicable."

(Emphasis added.)

In sum, neither *Leddy* nor *Korea Shipping* warrant holding a controlling officer or

shareholder responsible for the corporation's withdrawal liability as an "employer."  Therefore,

the Court should follow the universally accepted rule that Doherty's status as an alleged

controlling shareholder or officer cannot make him an "employer" for purposes of collecting US Rebar's withdrawal liability, and dismiss Count II of the Trustees' Counterclaim.

### B.    The Settlement Agreement and the Release Bar Count II of the Counterclaim

Count II of the Counterclaim also should be dismissed because it is based exclusively on conduct that occurred on or before June 30, 2005 and, therefore, the Settlement Agreement and the Release bar the Trustees from asserting that claim.

### 1.    The Settlement Agreement and the Release Bar Claims for All Matters Up to and Including June 30, 2005.

The plain language of the Settlement Agreement and the Release bar the Trustees from asserting any claims against Doherty based on events that occurred on or before June 30, 2005. [4] The Settlement Agreement states that the Trustees "will take no action against United States Rebar, Inc. and Charles S. Doherty <u>for any matters previous to June 30, 2005</u>."  (Emphasis added.)  Appendix, Exhibit 2, Settlement Agreement, ¶1C.  The Release similarly states that the Trustees release Doherty "from all actions …, claims, and demands, whatsoever … which … the RELEASORS … ever had, now have, or hereafter can, shall or may, have for, <u>upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Release.  For all those matters up to and including June 30, 2005</u>."  (Emphasis added.) Appendix, Exhibit 3.

### 2.    Count II of the Trustees' Counterclaim is Based Exclusively on Events that Occurred on or Before June 30, 2005.

All of the facts on which the Trustees base their claim that Doherty is an "employer" occurred on or before June 30, 2005.  First, the Trustees allege that "Doherty has admitted under

---

[4]  "[A] clear and unambiguous release … should be enforced according to its terms," and "when general language is used in the releasing document, 'the release is to be construed most strongly against the releasing party.'"  *Consorcio Prodipe S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S. D. N. Y. 2008).

oath that between 1997 and mid-2003, he orchestrated a criminal scheme to pay US Rebar's Union workers a substantial portion of their wages in case.  Doherty's admitted purpose in perpetrating the unlawful scheme to avoid having to make the CBA-mandated payments to, and fraudulently conceal the non-payment of such benefits from the Plan."  Appendix, Exhibit 1 (Counterclaim, ¶61).  Second, the Trustees cite Doherty's creation of NY Install in late 2004 as "an effort to conceal and disguise from the Plan the fact that withdrawal liability had been incurred .…"  *Id.* (Counterclaim, ¶65).  Therefore, because all of these events occurred before June 30, 2005, the Settlement Agreement and the Release bar the Trustees from pursuing Count II.

### C.    Doherty's Conduct After June 30, 2005 Does Not and Cannot Establish That He is an "Employer" for Purposes of MPPAA

Even if, under *Leddy* and *Korea Shipping* a controlling shareholder's or officer's fraud with respect to plan contributions could establish that the individual is an "employer" for purposes of collecting withdrawal liability, which is denied, the Trustees cannot establish the predicate element under *Leddy* that Doherty somehow defrauded them <u>after June 30, 2005</u>.[5]

To establish fraud for purposes of *Leddy*, the Trustees must show that Doherty made "(i) a material false representation or omission of an existing fact, (ii) the defendant's knowledge of the falsity, (iii) the defendants' intent to defraud, (iv) the plaintiff's reasonable reliance upon the misrepresentation or omission, and (v) consequent damage to the Plaintiff."  *Cement and Concrete Workers District Council Welfare Fund, Pension Fund, Legal Services Fund and*

---

[5]  Mere status as one who plays a dominant role in the affairs of a corporate employer is not sufficient to impose personal liability for delinquent contributions under *Leddy*.  *Sasso v. Cervoni,* 985 F. 2d 49, 51 (2d Cir.), *cert. denied,* 508 U.S. 973 (1993) ("His liability is sought to be established simply because of his dominant role in the affairs of a corporate employer.  If individual liability for ERISA obligations is to be imposed on those in such a role, Congress must supply the remedy.")

*Annuity Fund v. Lollo*, 148 F. 3d 194, 196 (2d Cir. 1998). Thus, to establish fraud for purposes of *Leddy,* the Trustees must be able to prove that Doherty somehow made false statements on which they relied to their detriment.

*Lollo* illustrates the difficulties the Trustees face trying to meet this high standard. In *Lollo,* trustees sought to impose personal liability <u>for delinquent contributions</u> on a controlling officer of a subcontractor. The officer in question had falsely represented to certain general contractors that the subcontractor did not owe any contributions to the trusts. In reliance on those false representations, the general contractors paid money to the subcontractor without taking steps to insure that the delinquent fund contributions would be paid. Although the district court found that the corporate officer had committed fraud and was liable for the delinquent contributions, the Court of Appeals for the Second Circuit reversed.

The Court of Appeals initially observed that "a fraud judgment had to be based on more than a finding that Lollo lied to a third party about the Company's unpaid obligations to the Funds. [Citation omitted.] Rather, the plaintiffs had to prove that they were themselves deceived," and could not establish the requisite reliance "by showing only that a third party relied on a defendant's false statements." 148 F. 3d at 196. Consequently, the Court ruled that "[b]ecause the district court did not find that plaintiffs had proven their reliance on Lollo's misrepresentations, and because there is no evidence that they did so rely, Lollo is not liable under either ERISA or New York law." *Id.* at 197. *See also Building Service 32B-J Health Fund v. McCaffree,* 225 Fed. Appx. 25 (2d Cir. 2007) (trustees failed to establish personal liability under *Leddy* because they did not present "evidence to show that they ever detrimentally relied upon misrepresentations made by appellee which deprived them of the delinquent contributions.")

Accordingly, even if *Leddy* can be used to hold a controlling shareholder or officer responsible for withdrawal liability, which is denied, Doherty cannot be considered to have an obligation to contribute to the Fund under *Leddy* unless, at a minimum, the Trustees demonstrate that (1) Doherty made materially false representations to them after June 30, 2005, and (2) they reasonably relied on the false representation to their detriment. However, the Trustees have not and cannot produce any such evidence.

First, the Trustees cannot reasonably assert that Doherty fraudulently misled them regarding hourly contributions because no such contributions have been or could be due for work performed after US Rebar terminated its last CBA effective June 30, 2005.

Second, the Trustees may assert that by operating NY Installation as US Rebar's alleged alter ego after June 30, 2005, Doherty somehow defrauded the Fund out of withdrawal liability; however, the fact that US Rebar continued to operate through its alleged alter ego NY Installation is the very event that, according to the Trustees, gave rise to the alleged withdrawal liability in the first place. Thus, the Trustees cannot reasonably claim that those same facts also simultaneously defrauded them out of the withdrawal liability.

Third, and most importantly, there is no evidence that Doherty made any false representations to the Trustees regarding US Rebar's or NY Installation's activities after June 30, 2005, on which the Trustees relied to their detriment. Doherty did not make any representations (or have a duty to make any representations) to the Trustees regarding US Rebar's or NY Installation's post-June 30, 2005 activities until after the Trustees assessed withdrawal liability on January 11, 2007. Since then, Doherty has steadfastly asserted that US Rebar and NY Installation are not alter egos, and the Trustees have steadfastly rejected those assertions and

pursued their assessment of withdrawal liability.  Appendix, Exhibit 4 (Trustees' letter dated August 1, 2007, rejecting Doherty's request for review of the assessment of withdrawal liability).

Accordingly, the Trustees cannot identify any post-June 30, 2005 fraud by Doherty that was (1) directed to them, and (2) on which they relied to their detriment.  Therefore, the Trustees cannot use *Leddy* to establish that Doherty conduct after June 30, 2005 rendered him an "employer" for purpose of withdrawal liability.

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant partial summary judgment in favor of Doherty and against the Trustees with respect to Count II of the Counterclaim, together with such other and further relief as the Court deems just and proper.

Dated:  August 20, 2008

BUCHANAN INGERSOLL & ROONEY PC

_____/s/_____
Ryan P. Farley (RF-6984)
New York Times Building
620 8th Avenue, 23rd Floor
New York, NY 10018
Phone:  212-440-4492
Fax:  212-440-4401
E-mail:  ryan.farley@bipc.com

OF COUNSEL:

Robert S. Hawkins
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985
Phone:  215-665-5310
Fax:  215-665-8760
E-mail:  robert.hawkins@bipc.com

David J. Laurent
George Basara
BUCHANAN INGERSOLL & ROONEY PC
20th Floor, One Oxford Centre
Pittsburgh, PA 15219-1410
Phone (412) 562-1857
Fax (412) 562-1041
E-Mail:  david.laurent@bipc.com