33. In addition, throughout the course of the negotiations, Doherty and US Rebar (directly and through their attorneys and accountants), falsely and fraudulently asserted to Plaintiffs that the true amount of dues and benefit contributions owed to the Plaintiffs was significantly less than had been determined by the Audits. For example, by letter dated July 21, 2005 (sent via facsimile), US Rebar's attorney stated that "US Rebar has advised that the actual sum due and owing to the Funds is $150,000."

34. Doherty and US Rebar also caused their attorneys to falsely and fraudulently represent to Plaintiffs, by letter dated December 12, 2005 (sent via facsimile), that: (a) US Rebar wanted the amount of benefit contributions due and owing to Plaintiffs to be paid accordingly; and (b) that the proposed settlement sum of $220,000 would in fact "place the [Plans] in a whole position."

35. Numerous other communications, both oral and in writing, took place in connection with the settlement negotiations between Doherty and US Rebar (principally through their attorneys and accountants) on the one hand, and Plaintiffs (principally through their attorneys and outside auditors) on the other.

36. Plaintiffs agreed, based on the purportedly accurate books and records presented during both the Audits and the ongoing settlement negotiations, to allow certain credits and deductions to the $323,321.27 Audit Balance. Ultimately, after several months of negotiations, Plaintiffs, Doherty and US Rebar agreed that the amount of $242,613.09, represented the full amount of delinquent dues and benefit contributions due to Plaintiffs in accordance with the Audits (the "Revised Audit Balance").

37. The Revised Audit Balance was agreed to by Plaintiffs based upon the Audits, which in turn were based upon the purportedly accurate books and records provided by Doherty

and US Rebar. Doherty and US Rebar agreed to pay the Revised Audit Balance, plus interest, in installment payments extending into late 2009.

38. Between February and early April 2006, draft settlement agreements were exchanged between counsel for the respective parties. In addition, counsel for the parties routinely exchanged, both orally and in writing, proposed revisions and comments to each other's respective drafts. Ultimately, a final settlement agreement was memorialized, executed, and so-ordered by the Hon. Carol B. Amon on or about April 7, 2006 (the "Settlement Agreement"), a copy of which is attached hereto as "Exhibit A."

39. The Settlement Agreement provided that, upon timely completion of the installment payments, the parties would exchange mutual general releases covering "all matters up to and including June 30, 2005."

40. The Settlement Agreement specifically provided that both US Rebar and Doherty "understood and agreed . . . that the settlement amounts herein represent payments of *all amounts owed by*" US Rebar and Doherty "for the period July 1, 2001 through June 30, 2005 under the terms of the . . . applicable collective bargaining agreements." Settlement Agreement at p.3 (Emphasis added).

**Doherty and US Rebar Falsified US Rebar's Weekly Reports and other Books and Records**

41. At all times relevant herein, and as part of their continuing scheme to defraud the Plaintiffs, Doherty and US Rebar knowingly and intentionally prepared, and/or caused to be prepared, and submitted to Plaintiffs, fraudulent Weekly Reports. These fraudulent Weekly Reports contained materially false statements and material omissions, in that they did not accurately report the amount of hours worked for which benefit contributions and other monies were due and owing to the Plaintiffs, pursuant to the terms and conditions of the CBA. Each of

the fraudulent Weekly Reports was falsely attested to and signed by Doherty or another officer of US Rebar.

42. Each of the false and misleading Weekly Reports deceived the Plaintiffs, in that they caused the Plaintiffs to believe that the full amount of benefit contributions and other monies due and owing to the Plaintiffs under the CBA had been paid, when in truth and fact, as Doherty and US Rebar well knew, such monies had not been paid.

43. In addition, at all times relevant herein, Doherty and US Rebar knowingly and intentionally prepared, and/or caused to be prepared, and provided to Plaintiffs and their outside auditors, a plethora of falsified, bogus, and otherwise fraudulent books and records, including, but not limited to, US Rebar's payroll, payroll ledgers, computer payroll printouts, Weekly Reports, W-2 forms, quarterly federal payroll tax returns (form 941), quarterly state payroll tax returns (forms WRS-2 and WRS-30), annual federal and state income tax returns, 1099 forms, and other materials relating to US Rebar's employees and payroll (the "Books and Records").

44. Each and all of the Books and Records contained materially false statements and material omissions, in that they both misstated and failed to completely and accurately report US Rebar's payroll. In particular, at all times relevant herein, US Rebar's Books and Records were materially false and misleading in that they failed to reflect in excess of $8.5 million of cash wages that Doherty had paid Union employees and the millions of dollars of associated benefit and other payments which were due and owing to the Plaintiffs in connection therewith.

45. Doherty and US Rebar prepared, and/or caused to be prepared, the fraudulent Books and Records with the specific intent to defraud the Plaintiffs and to disguise and fraudulently conceal Doherty's criminal scheme to which he has pled guilty as more fully set forth at paragraphs 19 - 25, *supra*.

46. At no time: (a) prior to, during, or after the Audits; (b) during the extensive settlement negotiations that took place following the initiation of the Lawsuit; or (c) at any time prior to the execution of the Settlement Agreement, did Doherty or US Rebar (or their attorneys, accountants, or any other third party) reveal or disclose to Plaintiffs or their auditors the fact the Books and Records which had been provided to Plaintiffs and their auditors, and which formed the basis of the Audits, were fraudulent and bogus, and that Doherty and US Rebar had paid Union employees in excess of $8.5 million of wages in cash not reflected therein.

47. Through the present, and as part of their continuing and ongoing efforts to defraud the Plaintiffs and shield themselves from civil liability for their criminal scheme, Doherty and US Rebar, through their various counsel in both the instant and other litigation (in documents filed electronically via ECF), continue to assert and seek to enforce the fraudulently induced Settlement Agreement (and general releases provided for therein).

### First Cause of Action

#### Against Doherty and US Rebar for Fraudulently Inducing The Plaintiffs to Enter into The Settlement Agreement

48. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 47 above as if fully set forth herein.

49. At all times relevant herein, US Rebar's Books and Records were materially false and misleading in that they failed to reflect, and fraudulently concealed, that Doherty had paid US Rebar's Union workers over $8.5 million of wages in cash and that the benefit contributions and other payments associated therewith were due and owing to Plaintiffs.

50. At all times relevant herein, Defendants Doherty and US Rebar were aware that the Books and Records which Doherty prepared, or caused to be prepared, and submitted to Plaintiffs and their outside auditors, were materially false and misleading.

11

51.     Moreover, at all times relevant herein, Doherty and US Rebar specifically intended to induce the Plaintiffs to enter into the Settlement Agreement in reliance on US Rebar's false, misleading, and fraudulent Books and Records.

52.     In particular, all of the oral and written communications made by Doherty and US Rebar (and/or their attorneys and accountants), during the course of the settlement negotiations and leading up to the execution of the Settlement Agreement, as more fully alleged in Paragraphs 32-35 and 38, *supra*, were made by Doherty and US Rebar (or their attorneys and/or accountants) for the specific purpose of fraudulently inducing Plaintiffs to enter into the Settlement Agreement, and contained material omissions of fact; that is, each such oral and written communication failed to disclose to Plaintiffs that Doherty had paid US Rebar's workers in excess of $8.5 million of wages in cash and that Doherty had falsified US Rebar's Books and Records to fraudulently conceal such payments and the fact that millions of dollars of benefit contributions and other payments were, in truth and fact, due and owing to Plaintiffs.

53.     Plaintiffs reasonably believed, at all times prior to the execution of the Settlement Agreement, that US Rebar's false, misleading, and fraudulent Books and Records provided complete and accurate information concerning US Rebar's employees and payroll.

54.     In addition, the July 21, 2005 and December 12, 2005 letters which Doherty and US Rebar's attorneys sent to Plaintiffs (the "Letters") contained fraudulent representations as more fully set forth in Paragraphs 33 and 34, *supra*. At the time that each of the Letters was sent, Doherty and US Rebar knew that the representations contained therein were materially false and misleading. Moreover, Doherty and US Rebar specifically intended to induce the Plaintiffs to enter into the Settlement Agreement in reliance on the false, misleading, and fraudulent

statements contained within the Letters and Plaintiffs, in fact, reasonably relied thereon to their detriment in entering into the Settlement Agreement.

55.   Accordingly, Plaintiffs have been damaged in an amount to be determined at trial, but believed to be in excess of $15 million.

<b><u>Second Cause of Action</u></b>

<b>Against Defendants Doherty and US Rebar for Racketeering<br>
in Violation of 18 U.S.C. § 1962(c)</b>

56.   Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 55 above as if fully set forth herein.

57.   At all times relevant herein, Defendants Doherty and US Rebar, together with James Wilson, Joseph Castello, Thomas E. McDonaugh, and others known and unknown, constituted an association-in-fact "enterprise" as defined in 18 U.S.C. §§ 1961(4), 1962(c).

58.   At all times relevant herein, the enterprise was an ongoing organization whose members and associates functioned as a continuing unit for a common purpose. The enterprise had a continuity of existence and an ascertainable structure distinct from both its constituency and the pattern of activity in which it engaged. The activities of the enterprise affected interstate and foreign commerce.

59.   The enterprise's common purpose was to enrich its members and associates through fraudulent and criminal activity, including, but not limited to, defrauding the Plaintiffs out of millions of dollars of CBA-mandated benefit payments and other monies to which they were lawfully entitled.

60.   Beginning in or about the mid-1990s and continuing through the present, Defendants Doherty and US Rebar, being employed by and associated with the enterprise, conducted and participated, directly and indirectly, in the conduct of the enterprise's affairs

through a "pattern of racketeering activity," as defined in 18 U.S.C. §§ 1961(5), 1962(c). More specifically, Defendants Doherty and US Rebar participated in operating and managing the enterprise.

61.     The pattern of racketeering activity included, without limitation: (a) multiple acts of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, money laundering and money laundering conspiracy in violation of 18 U.S.C. § 1956; and (b) multiple violations of both 18 U.S.C. § 664 and the Currency and Foreign Transactions Reporting Act – all of which are cognizable racketeering acts as enumerated in 18 U.S.C. § 1961(1).

62.     The acts comprising the pattern were related – to both the enterprise and each other – and continuous in that they spanned a period of years and posed a threat of repetition extending into the future. All of the acts occurred after Oct. 15, 1970, and the last occurred within 10 years of a prior act.

63.     In particular, the acts of mail and wire fraud included, without limitation: (a) The submission to Plaintiffs of the Weekly Reports which materially understated the number of hours worked by US Rebar's Union employees and, consequently, the amount of benefit payments and other monies due to Plaintiffs. These fraudulent Weekly Reports were transmitted to Plaintiffs by mail and/or wire; (b) All of the oral and written communications made by Doherty and US Rebar (and/or their attorneys and accountants), during the course of the settlement negotiations and leading up to the execution of the Settlement Agreement, as more fully alleged in Paragraphs 32-35 and 38, *supra*. Each of these communications was made by Doherty and US Rebar (or their attorneys and/or accountants) for the specific purpose of fraudulently inducing Plaintiffs to enter into the Settlement Agreement, and contained material omissions of fact; that is, each such

oral and written communication failed to disclose to Plaintiffs that Doherty had paid US Rebar's workers in excess of $8.5 million in cash wages and/or that Doherty and US Rebar had falsified the Books and Records to fraudulently conceal such payments and the fact that millions of dollars of benefit contributions and other payments were in fact due and owing to Plaintiffs. Each such communication was made via wire (telephone and/or facsimile) or mail; (c) the July 21, 2005 and December 12, 2005 letters which Doherty and US Rebar's attorneys sent to Plaintiffs contained fraudulent representations as more fully set forth in Paragraphs 33 and 34, *supra*. These letters were sent via wire (facsimile) on or about July 21, 2005 and December 12, 2005, respectively; and (d) Each of the court filings and letters which Doherty and US Rebar have caused and continue to cause their various attorneys to file in the instant and other litigation seeking to enforce the Settlement Agreement and bar Plaintiffs' legal claims, are fraudulent in that they materially omit the fact that the Settlement Agreement was fraudulently induced. Each such filing was transmitted by wire (ECF) and also by mail.

64. As more fully detailed above in Paragraphs 19-25, *supra*, the acts of money laundering and money laundering conspiracy included, without limitation: (a) US Rebar's routine issuance of checks made payable to fictitious vendors (and non-fictitious vendors with whom US Rebar had no business relationship); and (b) their subsequent conversion to cash via a check casher.

65. Defendant Doherty created these fictitious vendors (and non-fictitious entities with whom US Rebar had no business relationship) on US Rebar's books and records to conceal the nature of the criminal scheme from third-parties – including, among others, the Union, the Plans, and their auditors – and caused US Rebar to take fraudulent tax deductions for the checks